JANE DOE

11151 Valley Blvd #4886,

El Monte, CA 91734

626-208-9665

Plaintiff in Pro Se

FILED

APR - 9 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

JD

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CV20        2432

JANE DOE,                                          No.

             Plaintiff,

       v.

CITY OF CONCORD; COUNTY OF
CONTRA COSTA; COUNTY OF
SONOMA; GUY SWANGER; TAMRA
ROBERTS; CODY HARRISON;
RENELLE-REY VALEROS; DIANA
BECTON; CHRISTOPHER WALPOLE;
COLLEEN GLEASON; JILL RAVITCH;
ANNE MASTERSON; LAURA
PASSAGLIA; and DOES 1 - 10, inclusive,

             Defendants.

**COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE
RELIEF**

**JURY TRIAL IS HEREBY DEMANDED**

    Plaintiff JANE DOE ("Plaintiff") alleges and complains the following, on information and belief except for information identified as being based on personal knowledge, which allegations are likely to have evidentiary support after a reasonable opportunity for further discovery.

## **INTRODUCTION**

    1.    This is a civil rights complaint for damages and declaratory and injunctive relief arising from Defendants' violations of Plaintiff's fundamental rights to be free from discrimination, among others guaranteed by the United States Constitution, California

1

Constitution, and California laws. Defendants violated these rights when they conspired and practiced discriminatory under-policing and selective under-enforcement against rape victims, including Plaintiff.

2.     This action stems from law enforcement personnel's response to a heinous crime - rape. This action is about the discriminatory practice and ill will of law enforcement personnel, their betrayal of public trust, and failure to protect residents from victimization by rapists. Our law enforcement's response to rapes sends a catastrophic message to the whole of our society. To rape victims: bringing a complaint is useless. To rapists: you're allowed to rape as many women as you want and there will be no consequence!

3.     Plaintiff's constitutional injuries have occurred since the first minute she came into contact with law enforcement personnel who were supposed to support and protect her. Plaintiff was not only a rape victim but also a victim of discrimination, uneven enforcement of law, and law enforcement personnel's misconduct.

4.     Without the ability to hold law enforcement accountable for its responses, rape victims, including Plaintiff, will be far too likely to face hostility, disinterest, and concrete harms as a result of their interactions with law enforcement. The people who mishandle rape cases are just as bad as the perpetrators themselves because they are perpetuating rapes.

5.     Plaintiff has been injured by Defendants' willful refusal to provide the accommodations, advantages, privileges, and facilities of an unbiased and adequate sexual assault investigation, and effective prosecution. Plaintiff has endured multiple traumas; first, the criminal assault itself; second, a discriminatory, unconstitutional, unfair, and unequal treatment by the people sworn to protect the public - the government officials and actors who have instead discredited, dismissed, and denigrated Plaintiff as a rape victim; and finally, the additional trauma of watching her case and hope for justice languish and ultimately vanish, due to the sabotage, inaction and refusal to act by law enforcement personnel. Plaintiff's attacker will not see a day of consequence for his violent assault against her and it was a byproduct of the law enforcement in a discriminatory manner.

6.     As described in more detail below, Defendants' (a) actions, (b) patterns of

2

behavior, (c) history of decision-making, and (d) departures from normal procedures in the course of their response to sexual assaults, demonstrate ongoing, intentional discrimination against rape victims, including Plaintiff. Specifically, Defendants have committed constitutional violations by implementing, promoting, or maintaining policies, practices, and/or customs that:

    a. Refuse to implement and/or ignore proper training and supervision of government employees handling sexual assault cases;

    b. Allocate more resources to other violent crimes than to sexual assaults;

    c. Refuse to treat rape victims' testimony as evidence;

    d. Credit suspects' account over victims' version of story;

    e. Fail to arrest and charge known perpetrators of sexual assault, which resulted in extremely low arrest and prosecution rate compared to other crimes;

    f. Disproportionately refuse to thoroughly investigate sexual assault cases;

    g. Disproportionately refuse to prosecute perpetrators of sexual assault;

    h. Traumatize Plaintiff in the course of her interactions with Defendants by, among other things, refusing to treat her testimony as adequate evidence regarding lack of consent;

    i. Subject Plaintiff and other rape victims to future assaults by known perpetrators by failing to act on, investigate, and prosecute prior sexual assaults;

    j. Treat sexual assault cases with less urgency and importance than is afforded to other types of violent crimes;

    k. Treat victims of sexual assault, including Plaintiff, with less respect and devote less attention to their cases than to cases of other crimes (collectively referred to herein as the "Policies").

    7. Defendants' unconstitutional and discriminatory conduct subjects Plaintiff and other victims of sexual assault to continued risk at the hands of perpetrators who are never held accountable.

## **PARTIES**

8.      Plaintiff, JANE DOE ("Plaintiff"), is a resident of County of Los Angeles, State of California. At all relevant and material times, Plaintiff was a visitor in the County of Sonoma and Contra Costa, State of California.

9.      Defendant, City of Concord ("the City"), is a public entity and municipal corporation duly organized and existing under and by virtue of the laws of the State of California. Concord Police Department ("CONCORD PD") is an operating department of the City. The City is responsible for the training, policies, procedures, and actions of CONCORD PD and its employees. The City has direct supervisory authority over CONCORD PD and its officers, and CONCORD PD policies are City policies for purposes of municipal liability.

10.      Defendant, County of Contra Costa ("Contra Costa County"), is an incorporated municipality organized and existing under the laws of the State of California and wholly located within the State of California. Contra Costa County District Attorney's Office ("CCDA") is an operating department of Contra Costa County. Contra Costa County is responsible for the training, policies, procedures, and actions of CCDA and their employees. Contra Costa County has direct supervisory authority over CCDA and their personnel, and CCDA policies are County policies for purposes of municipal liability.

11.      Defendant, County of Sonoma ("Sonoma County"), is an incorporated municipality organized and existing under the laws of the State of California and wholly located within the State of California. Sonoma County District Attorney's Office ("SDA") is an operating department of Sonoma County. Sonoma County is responsible for the training, policies, procedures, and actions of SDA and their employees. Sonoma County has direct supervisory authority over SDA and their personnel, and SDA policies are County policies for purposes of municipal liability.

12.      <u>Defendant CONCORD PD Officers/personnel</u>: At all times herein mentioned, Plaintiff is informed and believes, and thereon alleges that individual Defendants Chief of Police Guy Swanger ("Swanger"), Detective Renelle-Rey Valeros, ID 505 ("Valeros"), Sergeant Cody Harrison, ID 335 ("Harrison") and Lieutenant Tamra Roberts, ID 422 ("Roberts"), were residents

of Contra Costa County and were civilian employees, agents and/or representatives of CONCORD PD. At all times relevant hereto, said Defendants were acting within the course and scope of their employment as officers, lieutenants, detectives, and/or civilian employees of CONCORD PD, a department and subdivision of Defendant City of Concord. At all times relevant herein, said Defendants were acting under color of law, under the color of statutes, ordinances, regulations, policies, customs, practices and usages of the City, CONCORD PD, and/or the State of California. At all times relevant hereto, Plaintiff alleges Swanger served as the highest official for CONCORD PD and made the City and CONCORD PD policy for that office. As Chief of Police, Swanger holds the command and policy making position with regards to CONCORD PD.

13.     Defendant CCDA Officials: At all times herein mentioned, Plaintiff is informed and believes, and thereon alleges that individual Defendant District Attorney Diana Becton ("Becton") is an elected public official. Individual Defendants Assistant District Attorney Christopher Walpole ("Walpole"), and Deputy District Attorney Colleen Gleason ("Gleason"), were residents of Contra Costa County and were civilian employees, agents and/or representatives of CCDA. At all times relevant hereto, said Defendants were acting within the course and scope of their employment as civilian employees of CCDA, a department and subdivision of Defendant Contra Costa County. At all times relevant herein, said Defendants were acting under color of law, under the color of statutes, ordinances, regulations, policies, customs, practices and usages of Contra Costa County, CCDA, and/or the State of California. At all times relevant hereto, Plaintiff alleges Becton served as the highest official for CCDA and made the County and CCDA policy for that office.

14.     Defendant SDA Officials: At all times herein mentioned, Plaintiff is informed and believes, and thereon alleges that individual Defendant District Attorney Jill Ravitch ("Ravitch") is an elected public official. Individual Defendants Chief Deputy District Attorney Anne Masterson ("Masterson"), and Deputy District Attorney Laura Passaglia ("Passaglia"), were residents of Sonoma County and were civilian employees, agents and/or representatives of SDA. At all times relevant hereto, said Defendants were acting within the course and scope of their

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1   employment as civilian employees of SDA, a department and subdivision of Defendant Sonoma

2   County. At all times relevant herein, said Defendants were acting under color of law, under the

3   color of statutes, ordinances, regulations, policies, customs, practices and usages of Sonoma

4   County, SDA, and/or the State of California. At all times relevant hereto, Plaintiff alleges Ravitch

5   served as the highest official for SDA and made the County and SDA policy for that office.

6       15.    **CCDA and SDA Officials are not immune to this suit**. "Prosecutorial immunity

7   only protects the defendants from [§] 1983 damage claims; it does not protect them from suits for

8   injunctive relief." Gobel, 867 F.2d at 1203 n.6. To determine whether particular actions warrant

9   absolute immunity, courts apply a "functional approach." *Buckley v. Fitzsimmons*, 509 U.S. 259,

10  269 (1993). This approach "looks to 'the nature of the function performed, **not the identity of the**

11  **actor who performed it**[.]'" Id. (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).

12  "Absolute immunity 'is an extreme remedy, and it is justified only where any lesser degree of

13  immunity could impair the judicial process itself.'" *Garmon v. Cty. of Los Angeles*, 828 F.3d 837,

14  843 (9th Cir. 2016) (quoting *Lacey v. Maricopa Cty.*, 693 F.3d 896, 912 (9th Cir. 2012) (en

15  banc)). See also *Brooks v. Clark Cty.*, 828 F.3d 910, 915–16 (9th Cir. 2016) (discussing absolute

16  immunity). "[T]he official seeking absolute immunity bears the burden of showing that such

17  immunity is justified for the function in question." Burns, 500 U.S. at 486. "The presumption is

18  that qualified rather than absolute immunity is sufficient to protect government officials in the

19  exercise of their duties." Id. At 486-87. The purpose of absolute immunity is to eliminate

20  susceptibility to legal actions that would inhibit prosecutors from aggressively prosecuting cases.

21  When prosecutors fail to perform their duties, provide favoritism to suspects, and act in their own

22  interest this Court should reject their absolute immunity. The following actions by CCDA and

23  SDA Officials are neither prosecutorial in nature nor decisions of judgment but deplorable

24  intentional antithesis of exercise of judgment:

25          a.    Adopt "no policy" policy for prosecution of rape which suggests deliberate

26                indifference to rape victims safety and a general disinterest in prosecuting sexual

27                assaults due to bias. The lack of written policy allows CCDA and SDA Officials to

28                make wholly arbitrary decisions and is the moving force behind Plaintiff's

1    constitutional injuries;

2    b. When asked to adopt "offender-focused approach" and "expert witness strategy"

3      that are recommended by National District Attorneys Association ("NDAA")

4      CCDA and SDA Officials maliciously refused, giving an ostensible reason that the

5      case cannot be proved beyond a reasonable doubt and falsely told Plaintiff that

6      jury would not believe expert witness. Bias against rape victims could not be

7      clearer; <Prosecuting Alcohol-Facilitated Sexual Assault>

8      (http://atixa.org/wordpress/wp-

9      content/uploads/2014/04/pub_prosecuting_alcohol_facilitated_sexual_assault.pdf),

10      <Cold Case Alcohol- and Drug-Facilitated Sexual Assault>

11      (https://www.sakitta.org/toolkit/docs/Cold-Case-Alcohol-and-Drug-Facilitated-

12      Sexual-Assault.pdf), <Understanding the non-stranger rapist>

13      (http://www.ncdsv.org/images/NDAA_UnderstandingNonstrangerRapist_TheVoic

14      e_vol_1_no_11_2007.pdf)

15    c. Willfully refuse to perform their duties pursuant to professional standards;

16    d. Intentionally and consistently credit the suspect's version over Plaintiff's account

17      because she is a rape victim, notwithstanding objective evidence;

18    e. Callously disregard victim and community safety by using absolute immunity as a

19      badge and shield for their discriminatory practice with no showing of a valid state

20      interest;

21    f. Deter Plaintiff from pursuing truth and justice by falsely telling her that there was

22      not enough evidence and creating purported reasons to justify their discriminatory

23      and unconstitutional treatment to Plaintiff because she is a woman reporting rape;

24    g. Falsely told Plaintiff there was no corroboration, despite corroboration is not

25      required by law for conviction; (https://aequitasresource.org/wp-

26      content/uploads/2018/09/Model-Response-to-Sexual-Violence-for-Prosecutors-

27      RSVP-An-Invitation-to-Lead.pdf)

28    h. Made multiple untrue statements to Plaintiff that were far departure from

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

professional standards, jury instruction, and prosecution guidelines which is a
strong indicator that discriminatory intent was a motivating factor for CCDA and
SDA Officials' wild spread custom;

i.  Act in their own personal interest to avoid losing at trial simply because rape cases
are hard to win and they want their personal conviction rates look good (their
powerful incentive to discriminate against rape victims);

j.  Intentionally enforce a "non-law", maliciously requiring strong corroboration and
physical evidence to establish rape, a requirement that is not required by law or
jury instruction, reflecting higher criteria compared to other crimes with no
showing of legitimate state interest but solely aiming at conviction rate for
prosecutor's own personal interest;

k.  Maliciously ignore the fact that a victim's testimony alone is legally sufficient
evidence for filing charges but falsely told Plaintiff that there was no
corroboration, reflecting rape cases are less "worthy" of prosecution than other
crime cases;

l.  Willfully provide favoritism and leniency towards rapists, including Weamer who
attacked Plaintiff;

m. Intentionally use their control and influence to shut Plaintiff out of criminal justice
system and reduce the number of perpetrators held accountable for sexual assaults;

n.  Employ disparate unwritten policy to rape cases compared to other type of crimes;
(In 2017 and 2018, CCDA's prosecution rate of rape is as low as 34% although
few sex crimes referred for prosecution by police and sheriff. This compares to a
higher rate at every stage for non-rape crimes, reflecting the lowest priority of
CCDA's efforts. SDA has not been able to provide prosecution rate so far.)

o.  Use "insufficient evidence" as a disguise to deprive Plaintiff of her constitutional
rights;

p.  Employ unconstitutional and discriminatory practice against sexual assault
victims, including Plaintiff; and

8

1    q. Misuse their power to undermine the quality of justice.

2    16.    Defendant DOES 1 through 10 are not known or identified at this time. On

3    information and belief, Plaintiff alleges that each Doe is in some manner responsible for the

4    wrongs alleged herein, and that each such Defendant advised, encouraged, participated in,

5    ratified, directed, or conspired to do, the wrongful acts alleged herein.  When the true names and

6    capacities of said Defendants become known, Plaintiff will seek relief to amend this complaint to

7    show their true identities in place of their fictitious names as DOES 1 through 10. Defendants,

8    DOES 1 through 10, and each of them, were the agents, employees and servants of the City,

9    Contra Costa or Sonoma County.  Defendants DOES 1 through 10 acted in the course and scope

10   of said agency, service and employment at all relevant times.

11   17.    Plaintiff is informed and believes and thereon alleges that each of the Defendants

12   designated as a DOE is intentionally and negligently responsible in some manner for the events

13   and happenings herein referred to, and thereby proximately caused injuries and damages as herein

14   alleged.

15   18.    Defendants, and each of them, did the acts and omissions hereinafter alleged in

16   bad faith and with knowledge that their conduct violated well established and settled law.

17   19.    All Defendants are sued in their official capacities for declaratory and injunctive

18   relief as to all claims. All Defendants are also sued for damages arising from violations of 42

19   U.S.C. §§ 1983 and 1985, and for violations of state law and the California Constitution.

20   20.    Defendants CONCORD PD Officers, CCDA and SDA Officials, and DOES 1

21   through 10 are also sued in their individual capacities for their violations of Plaintiff's

22   constitutional and statutory rights.

23

24                        **JURISDICTION AND VENUE**

25   21.    The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a) because

26   this action arises under the Fourth and Fourteenth Amendments to the United States Constitution

27   and 42 U.S.C. §§ 1983 and 1985.

28   22.    The Court may award damages and grant declaratory and injunctive relief for

9

1  constitutional violations pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and/or Federal Rules of

2  Civil Procedure 57 and 65.

3      23.    Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that

4  give rise to this action occurred within this district and the Defendants reside in this district and

5  state.

6

7                    **CONCORD PD POLICIES AND PROCEDURES**

8      24.    At all relevant times, all CONCORD PD members were required to be apprised of

9  the Fourteenth Amendment of the United States Constitution, and were required, at all times, to

10  follow the United States Constitution, the laws of California and also to comply with CONCORD

11  PD's Mission. CONCORD PD's Mission applies to all CONCORD PD members such as

12  Defendant CONCORD PD Officers. Each member of CONCORD PD, including Defendant

13  CONCORD PD Officers, is required to be familiar with CONCORD PD mission and must adhere

14  to its directives.

15      25.    CONCORD PD's Mission states "The members of the Concord Police

16  Department are dedicated to providing the highest quality police services in order to enhance

17  community safety, protect life and property, and reduce crime and the fear of crime. To do this,

18  we pledge to develop a partnership with the community, lead a community commitment to

19  resolve problems, and improve the safety and quality of life in our City."

20  (https://www.cityofconcord.org/841/Department-Policy)

21      26.    Although providing the highest quality police services is CONCORD PD's

22  mission no written policies relating to investigation of rape exists which suggests deliberate

23  indifference to rape victims safety and a general disinterest in investigating sexual assaults due to

24  bias and dismissive attitude.

25

26                            **CRIMINAL PROSECUTION**

27      27.    As the United States Supreme Court has explained, the prosecutor represents "a

28  sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in exercising the sovereign power, of the state.

28.     American Bar Association Criminal Justice Standards for the Prosecution Function: Standard 3-1.2 Functions and Duties of the Prosecutor (b) The primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict. Standard 3-4.4 Discretion in Filing, Declining, Maintaining, and Dismissing Criminal Charges (c) A prosecutor may file and maintain charges even if juries in the jurisdiction have tended to acquit persons accused of the particular kind of criminal act in question. (https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/ )

29.     In cases which involve a **serious threat** to the community, the prosecutor should not be deterred from prosecution by the fact that in the jurisdiction juries have tended to acquit persons accused of the particular kind of criminal act in question because prosecutors have an ethical obligation to pursue difficult cases for public safety reasons.

30.     According to NDAA, rape cases rarely have physical evidence that conclusively proves that a rape occurred. The evidence need not **conclusively** prove that a rape occurred; rather, it must give the jury a sufficient **context** in which to evaluate the victim's credibility. (http://atixa.org/wordpress/wp-content/uploads/2014/04/pub_prosecuting_alcohol_facilitated_sexual_assault.pdf)

31.     Physical evidence can prove that the intercourse happened, but not the absence of consent. When there's no issue about who the assailant is DNA doesn't really contribute anything. Victim's reaction or whether or not victim stays contact with the perpetrator is not a crime element. It's prosecutor's duty to educate the jury the right way to identify whether or not a crime occurred.

32.     CCDA declares that their office's mission is to seek justice and enhance public safety for all their residents by fairly, ethically, aggressively and efficiently prosecuting those

11

who violate the law, and by working to prevent crime.

(https://www.contracosta.ca.gov/7284/District-Attorney)

33. SDA's mission statement indicates that "We shall seek truth and justice in a professional manner, while maintaining the highest ethical standards." (http://da.sonoma-county.org/content.aspx?sid=1023&id=1379)

34. AEquitas is a national technical assistance provider that specializes in the prosecution of gender-based violence and human trafficking crimes. AEquitas is a nonprofit organization that brings decades of prosecution experience and collaborative approach to offer law enforcement advice and resources across disciplines at no cost. (https://aequitasresource.org/)

35. Corroboration is not required by law for conviction. (https://aequitasresource.org/wp-content/uploads/2018/09/Model-Response-to-Sexual-Violence-for-Prosecutors-RSVP-An-Invitation-to-Lead.pdf)

36. In 2018 in California the arrest rate of rape is as low as 16.4% while arrest rate of aggravated assault is 85.5%. (https://data-openjustice.doj.ca.gov/sites/default/files/2019-07/Crime%20In%20CA%202018%2020190701.pdf)

**SEXUAL AND DOMESTIC VIOLENCE**

37. Five categories of sexual violence (https://ndaa.org/wp-content/uploads/NDAA-DV-White-Paper-FINAL-revised-July-17-2017-1.pdf):

    a. Rape or penetration of victim;

    b. Victim made to penetrate someone else;

    c. Non-physically pressured unwanted penetration;

    d. Unwanted sexual contact, defined as the "intentional touching of the victim or making the victim touch the perpetrator, either directly or through clothing . . . without the victim's consent";

    e. Non-contact unwanted sexual experiences, defined as the "unwanted exposure to sexual situations (e.g., pornography); verbal or behavioral sexual harassment; threats of sexual violence to accomplish some other end; and /or

12

unwanted filming, taking, or disseminating photographs of a sexual nature of another person".

38.      Researches show that distorted thoughts is one of the main reasons women stay in abusive relationships. Being controlled and hurt is traumatizing, and this leads to confusion, doubts, and even self-blame. For example, women shared: "I believed I deserved it." Others minimize the abuse as a way to cope with it, saying: "[I stayed] because I didn't think that emotional and financial abuse was really abuse. Because words don't leave bruises," and, "Because I didn't know what my boyfriend did to me was rape." (http://www.ncdsv.org/images/Investigating%20and%20Prosecuting%20Intimate%20Partner%20Sexual%20Assa....pdf); (https://law.lclark.edu/live/files/17491-countering-common-misperceptions-of-sa-victims)

39.      When NFL linebacker Ray Rice knocked his fiancée Janay Palmer unconscious in an elevator in 2014, it didn't initially get much attention. He was accused of domestic violence and suspended for two games. After a few weeks, he was formally charged, but he and Palmer were married the next day. A security video quickly went viral showing Janay Palmer knocked down and roughly dragged out of the elevator by Rice. Victim's staying with their abuser does not erase the crime committed by the abuser.

40.      Both rape and battery are domestic violence and they should be treated the same way. No law requires a victim breaking up with their attacker to establish battery or rape.

## RAPE KIT BACKLOG

41.      In 2015 there were 2400 untested rape kit found in Contra Costa County. However, there was never ever any backlog of DNA testing for murder or other crimes.

42.      The discriminatory practice against rape victims is long-standing, wildspread, and well settled. (https://www.huffpost.com/entry/the-rape-kit-backlog-shows-exactly-how-we-regard-women-in-this-country_n_5acfb5e1e4b016a07e9a8c65 )

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

43. In 2013 Edward Weamer ("Weamer") was a police officer at Sonoma University Police Department. In Nov 2013 via an online app "POF" Weamer friended Plaintiff and started chatting with her online.

44. Before Plaintiff met Weamer in person she made a clear statement via text messages that she didn't want to rush sex and insisted to stick to her traditional culture. Weamer agreed to respect Plaintiff so Plaintiff decided to meet him in person.

45. Once Plaintiff met Weamer in person, he didn't keep his words and forced himself on top of Plaintiff around ten times between 2013 and 2014.

46. Via Plaintiff's message conversations with Weamer he acknowledged that each time Plaintiff said no and resisted. Plaintiff also accused Weamer that he set her up but she was not able to recognize what Weamer had done to her was a crime due to her confusion about rape. Plaintiff mistakenly thought rape was a crime committed by a stranger. < Understanding and Countering Rape Myths > (https://www.nationalguard.mil/Portals/31/Documents/J1/SAPR/SARCVATraining/Barriers_to_Credibility.pdf)

47. In Aug 2014 Plaintiff broke up with Weamer and never had contact with him again. Over the years Plaintiff has been broken, and experienced depression, anxiety, and low self-esteem but she didn't know where those came from until Oct 2019.

48. In Oct 2019 Plaintiff met with LA County prosecutor Peter Cagney and he explained to Plaintiff what rape was. Plaintiff has realized what Weamer had done to her was in fact rape.

49. Plaintiff finally gathered her courage to come forward on Oct 18, 2019. At the time she believed that coming forward would be her first step to heal and it was her moral obligation to report it to stop it. However, it turned out she was completely wrong and her life has been turned upside down.

50. In 2013 Plaintiff was raped in Cotati. In 2014 Weamer raped Plaintiff in Concord. Plaintiff filed the police reports with Cotati Police Department ("Cotati PD") and Concord PD respectively on Oct 18, 2019.

14

51. After the initial report was filed on Oct 18, 2019 Cotati PD informed Plaintiff of victims rights and followed up with Plaintiff the following week. The case was subsequently submitted to SDA.

52. After the initial interview with Concord PD Officer Shasta Vanetti on Oct 18, 2019, the following month Plaintiff heard nothing from CONCORD PD, no follow-up and literally nothing.

53. In November 2019 Plaintiff left voice mail to Detective Valeros but still heard nothing from CONCORD PD in the following month.

54. In December 2019 after Plaintiff reached out to Sgt Harrison she finally got a phone call from Detective Valeros.

55. Rather than ask relevant questions regarding crime elements the first thing Valeros wanted to confirm was "So are you still living in Southern California?" Perhaps he thought he could treat this case less seriously because the victim lived far away.

56. Then Plaintiff was asked by Valeros what's her ultimate goal. Such humiliating and degrading question strongly suggests his discriminatory animus towards Plaintiff as a rape victim. Such question demonstrates that Valeros thought Plaintiff came forward for something else other than justice. A victim of other crimes would not be asked about their goal to come forward.

57. Plaintiff was shocked to find out the suspect was not contacted nearly two months after she reported the crime.

58. Despite there is no statute of limitations for rape Valeros told Plaintiff this happened five years ago. Even though Weamer admitted through texts that each time Plaintiff said no and resisted Valeros told Plaintiff he could not prove it was Weamer who was texting.

59. No useful information was extracted during Plaintiff's conversation with Valeros. No question regarding the crime element was asked. The "investigation" conducted by Valeros was meaningless with respect to proving a crime. Instead, Valeros' language reflects how he deterred Plaintiff from pursuing the case.

60. Despite pretext phonecall is a commonly used technique to obtain confession from

15

1   the offender Valero opt not to use it, not to mention he would not spend any effort finding out if
2   there would be more women victimized by Weamer.

3       61.     In December 2019 Plaintiff was really concerned by Valeros' attitude and she
4   reached out to Sgt Harrison again. However, despite there is no statute of limitations for rape and
5   physical evidence is not required by law or jury instruction, Harrison falsely announced to
6   Plaintiff that the case was six years old and there was no physical evidence at all for filing
7   charges. Harrison didn't stop there. He further falsely told Plaintiff that there was no indication of
8   any type of sexual assault and appeared quite consensual which strongly suggests how
9   CONCORD PD Officers deterred Plaintiff from pursuing justice and CONCORD PD Officers'
10  discriminatory intent to discount and dismiss Plaintiff's allegation.

11      62.     After the horrifying interactions with Valero and Harrison Plaintiff reached out to
12  Lieutenant Roberts.

13      63.     Despite victim's testimony is legally enough to file charges Roberts falsely told
14  Plaintiff that her testimony was absolutely not enough and there was no evidence of sexual
15  assault.

16      64.     When there's no issue about who the assailant is DNA doesn't really contribute
17  anything. Despite the suspect is known and admitted having sex with Plaintiff, despite what says
18  on jury instruction, Roberts falsely told Plaintiff "There needs to be physical evidence, uh, either
19  DNA evidence or a confession from the suspect. Um, and we don't have any of those things. In
20  this case, there's no DNA evidence."

21      65.     The crime of battery (e.g. a punch) is established based solely on the perpetrator's
22  actions and/or intent. The victim's response to being punched is irrelevant. The victim need not
23  resist nor express unwillingness to being punched to establish a crime, nor is a victim's history of
24  being punched relevant. The relationship between the assailant and the victim does not make the
25  crime less seriously or make the victim suffer less.

26      66.     While Plaintiff pointed out that Weamer acknowledged each time Plaintiff said no
27  and resisted but Roberts challenged Plaintiff "But then you got back together with him and
28  continued." It's obvious that Roberts treat rape completely different from other crimes.

67.     There is no law requires victim act in certain way in order to prove she was raped. Roberts' stereotype about how victims should behave constitutes unlawful discrimination. Roberts' language also reflects her discriminatory intent to discredit Plaintiff and discard Plaintiff's allegation. Roberts' announcement left Plaintiff feeling coming forward was a punishment to herself and she should not have reported the incident to the police at all. Such victim blaming does not occur with other types of crimes. Moreover, according to Roberts' theory a man is entitled to rape a woman if they are in a relationship, suggesting a strong purposeful animus towards Plaintiff.

68.     Although victim's reaction is not a crime element Roberts twisted Plaintiff's account of story and announced to Plaintiff "You were okay with having sex." by ignoring how a victim would process trauma. Then Roberts falsely told Plaintiff the text messages would only work in the suspect's favor and there was no evidence of sexual assault.

69.     Battery and rape are both domestic violence. The law does not require a victim break up with the assailant to establish battery but Roberts told Plaintiff "This is a different situation. You continue to get together with him." Roberts imposed a non-law to require Plaintiff break up with the suspect to establish rape. Roberts flat out told Plaintiff "Most people, if they got raped, they wouldn't get together with that person again." Such remarks strongly suggest an intention to treat sexual assault cases less seriously than other assaults, as well as an animus against rape victims. Roberts' pro-defendant attitude is capable of several interpretations: perhaps he believed that men are always entitled to sex in a relationship, that Plaintiff was not entirely blameless because she stayed contact with the attacker, that such assault was less severe and traumatic because she was dating this suspect, or that state officials should not intrude upon dating violence. Whatever the reason, Roberts' language reflects an outdated misconception concerning rapes that cannot be used as a source of differential treatment. Roberts' statement also demonstrates her discriminatory intent to devalue Plaintiff's allegation.

70.     When Plaintiff pointed out rape should be treated the same way as battery Roberts responded "I don't think I can understand what you are saying."

71.     Regardless Plaintiff say no and resisted each time Roberts twisted it as sexual play.

17

Roberts also declared "A district attorney would have a very hard time convincing a jury of 11 people."

72.     The language and attitude of CONCORD PD Officers suggests that they made minimal or maybe no effort to investigate the suspect in Plaintiff's case. None has been done to see if there are more women victimized by the suspect. None has been done in order to support Plaintiff's allegation.

73.     Roberts went on and told Plaintiff "The district attorney's office won't prosecute on a case like this." "If we don't have any evidence, then we don't submit the case to the district attorney." "It is here in Contra Costa County, the district attorney's office would never file a case like this. Um, I've been doing this for 18 years. I've worked sexual assault for five years. Um, they will never file a case like this."

74.     In December 2019 Plaintiff filed a complaint with Swanger but Plaintiff never received any investigation result.

75.     CONCORD PD personnel did not inform Plaintiff of victims' rights as set forth in California constitution. At that time, and at all relevant times, CONCORD PD personnel had full knowledge of CONCORD PD's mission and awareness of proper investigation protocol.

76.     At that time, and at all relevant times, CONCORD PD Officers were aware of CONCORD PD's mission and their role as law enforcement personnel.

77.     By failing to discipline or act, Swanger endorsed or approved the unconstitutional conduct of individual officers.

78.     Plaintiff requested CONCORD PD's policy and procedures regarding sexual assault investigation but no such thing existed.

79.     In January 2020 CCDA declined to file charges against Weamer.

80.     Given the way how law enforcement personnel responded to rapes, Plaintiff asked herself "Can you imagine how many victims didn't get the justice they deserved?"

81.     On Jan 7, 2020 during a recorded phone call conversation Gleason told Plaintiff this was a he said she said case by ignoring the objective evidence. Gleason announced that there was NO EVIDENCE to prove it was not consensual by invaliding Plaintiff's testimony. By

18

intentionally ignoring the context Gleason falsely told Plaintiff that the jury would interpret it as rough sex and Plaintiff came forward because she was upset about Weamer chasing other girls. Gleason took every word of Weamer as true even though a normal person, through inference, could easily tell Weamer was lying. By ignoring the fact that Plaintiff texted Weamer he set her up Gleason credited Weamer because Weamer falsely said Plaintiff enjoyed the sex and put his penis in her vagina.

82. At the end of the phone conversation with Gleason Plaintiff requested to speak with her supervisor, Walpole.

83. At that time, and at all relevant times, Gleason was aware of CCDA's mission and her role as a prosecutor.

84. In Jan 2020 Plaintiff notified Becton of the constitution violation.

85. On Jan 8, 2020 during a recorded phone call conversation Walpole declared that it was their filing standard to file cases they believed they could win. "We wouldn't file cases if we don't get a guilty verdict." "It's a big hurdle." Walpole also announced that they would need strong corroboration despite it was not required by law.

86. In 2018 in California the conviction rate of violent offenses is 56.8% (https://data-openjustice.doj.ca.gov/sites/default/files/2019-07/Crime%20In%20CA%202018%2020190701.pdf). However, Walpole flat out told Plaintiff "We only file cases we believe we can win. That's our filing standard."

87. When Plaintiff questioned about the use of expert witness Walpole falsely told her many times jury would disagree with the expert. Despite stereotype about how victims should behave is unlawful discrimination and it's a prosecutor's job to select unbiased jury Walpole falsely told Plaintiff the jury would say "If I was in her shoes, I wouldn't have had the relationship."

88. By invaliding Plaintiff's testimony Walpole valued Weamer's version because Weamer falsely said Plaintiff put his penis inside her and being upset about Weamer seeing other women was Plaintiff's motive to pursue this case. Walpole also declared this was part of the #Metoo movement.

19

89. Although Plaintiff's motive is not a crime element Walpole attacked Plaintiff's motive of coming forward was the suspect was seeing other women. Motive of victims of other assaults would not be attacked as a target.

90. The entire time Walpole tried his best to derail Plaintiff from pursuing the truth and justice, reflecting Walpole's conscious choice not to overcome common defenses. Rather than uphold the law, educate the jury, and overcome common defenses, Walpole chose to act as the suspect's advocate.

91. At that time, and at all relevant times, Walpole was aware of CCDA's mission and his role as a prosecutor and supervisor.

92. On Jan 25, 2020 Plaintiff filed a complaint with CCDA regarding the constitutional violation.

93. By failing to discipline or act, Contra Costa County and Becton endorsed or approved the unconstitutional conduct of individual employees.

94. Plaintiff requested CCDA's policy and procedures regarding sexual assault prosecution but no such thing was available.

95. On Feb 10, 2020 during a recorded phone call conversation Passaglia told Plaintiff this case was fairly old regardless of no statute of limitation for rape. Despite corroboration is not require by law Passaglia announced "We don't have any opportunity to do any investigation or find any corroboration".

96. Passaglia went on and told Plaintiff "It's not enough for me to say conclusively what exactly occurred" and such statement is completely opposite to the prosecution guideline set forth by NDAA. Despite sexual assault cases rarely have witnesses Passaglia declared "There is no opportunity to interview any witnesses and talk to people in real time."

97. On Feb 15, 2020 Plaintiff emailed Masterson and encourage her to follow the prosecution guidelines but Plaintiff's email was ignored, reflecting SDA's dismissive attitude.

98. At that time, and at all relevant times, Passaglia and Masterson were aware of SDA's mission and their role as a prosecutor.

99. In Feb 2020 Plaintiff filed complaint with Ravitch but no action was taken.

20

1    100.    By failing to discipline or act, Sonoma County and Ravitch endorsed or approved

2    the unconstitutional conduct of individual employees.

3    101.    Plaintiff requested SDA's prosecution policy for sexual assault but no such thing

4    exists as Missoula County Attorney's Office does. <MISSOULA COUNTY ATTORNEY'S

5    OFFICE SEXUAL ASSAULT POLICY & PROCEDURE MANUAL> (https://dojmt.gov/wp-

6    content/uploads/SEXUAL-ASSAULT-POLICY-AND-PROCEDURE-MANUAL.pdf )

7    102.    The American Bar Association standard related to Prosecution Function says that

8    the duty of the prosecutor is to seek justice, not merely to convict. Giving false statement to a

9    victim is not prosecutorial in nature. Instead, CCDA and SDA Officials were afraid to lose the

10   case and affect their personal performance. In another words CCDA and SDA Officials acted in

11   their own interest and personal capacity during the employment as prosecutor.

12   103.    The life-long devastating harm caused by sexual assault is profound and

13   exacerbated by Defendants' deprivation of Plaintiff's fundamental rights secured to her by laws.

14   The depth of trauma inflicted upon Plaintiff has a significant impact not only on the victim, but

15   on the entire community because of the scope and lasting effect of the harm, and the fact that

16   unpunished perpetrators are encouraged to repeat their crimes.

17   104.    Plaintiff finally experienced the despair and emotional distress of living with the

18   knowledge that her rapist would never be held accountable for his act, and nothing was stopping

19   him from assaulting others. Plaintiff's rapist was well protected by law enforcement while she

20   was not and he walks free with the confidence that he can rape other women with no

21   repercussions. A rapist's words prevail and conquer in every aspect but none of Plaintiff's words

22   ever counts.

23   105.    The depth of Defendants' discriminatory treatment of sexual assault victims is all

24   the more troubling given the recent expansion of societal awareness of and sensitivity to sexual

25   assault. The discriminatory treatment and deprivation of equal protection of the laws by

26   Defendants caused significant emotional injury to Plaintiff separate and apart from the harm she

27   suffered as a rape victim.

28   106.    Upon information and belief, critical decision-making regarding the distribution of

21

1  resources and staffing, training of officers, detectives, and other personnel, treatment of victims
2  who come forward, and other policies and/or practices that led to the discriminatory denial and/or
3  hostile provision of services to Plaintiff were made by Defendants Swanger, Becton, Ravitch,
4  and/or among others.

5      107.    Failure of CONCORD PD, CCDA and SDA to adhere to mission statement and
6  training, permits and facilitates the unlawful conduct described above. Accountability systems of
7  CONCORD PD, CCDA and SDA, do not sufficiently detect or prevent unlawful conduct,
8  CONCORD PD, CCDA and SDA did not properly consider and resolve complaints from
9  Plaintiff. Early warning system of CONCORD PD, CCDA and SDA does not adequately identify
10  or effectively respond to a need for intervention to prevent future violations of constitutional
11  rights of sexual assault victims.

12      108.    Plaintiff's complaints were not formally investigated. CONCORD PD, CCDA and
13  SDA minimized the seriousness of Plaintiff's complaints by failing to investigate as a serious
14  complaint that could potentially result in discipline.

15      109.    At its core, the current organizational structure of CONCORD PD, CCDA, and
16  SDA is not capable of adequately addressing the victimization and lifetime damage inflicted on
17  sexual assault victims or to stop repeat perpetrators, particularly those who sexually assault
18  women they know or who use drugs/alcohol to commit their sexual assaults.
19  <Educating Juries in Sexual Assault Cases>
20  http://www.ncdsv.org/images/AEquitas_EducatingJuriesInSexualAssaultCasesPart1_7-2010.pdf)

21      110.    Not having any written policy and procedure for investigation and prosecution of a
22  heinous crime – sexual assault, suggests that Concord PD, CCDA, and SDA disregard the known
23  or obvious consequence and it is a conscious choice.

24

25                       **FIRST CAUSE OF ACTION**
26                    **Equal Protection (42 U.S.C. § 1983)**
27                      **Against all Defendants**

28      111.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

the paragraphs above.

112. The Fourteenth Amendment prohibits the states from denying to all persons within its jurisdiction the equal protection of the laws. Denying includes inaction as well as action, and denying the equal protection of the laws includes the omission to protect.

113. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Sioux City Bridge Co. v. Dakota Cty., 260 U.S. 441, 445 (1923) (quoting Sunday Lake Iron Co. v. Wakefield Twp., 247 U.S. 350, 352 (1918)). Discriminatory policing occurs when police officers and departments selectively enforce the law - or fail to enforce the law - based on arbitrary factors.

114. Equal protection rights are violated when (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Discriminatory intent implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker selected or reaffirmed a particular course of action at least in part because of – not merely in spite of – its adverse effects upon an identifiable group.

115. Plaintiff is a member of an identifiable group. As pled above, she is a rape victim who has been treated differently based upon illegitimate stereotypes and archaic notions of sexual assault. She further alleges that Defendants acted with discriminatory intent in discounting, invalidating, and dismissing her allegation.

116. Defendants' omissions and actions described above, when analyzed as a whole using a contextualist approach, permit the inference that Plaintiff's individual case was treated differently without a rational basis and showcase Defendants' custom and practice of intentional discriminatory under-policing and selective under-enforcement. Defendants intentionally provide unequal protection to sexual assault victims in the form of failing to respond with equal effort to sexual assault victims the same as Defendants do with victims of other crimes.

117. There was no reason for the misconducts and ill treatments other than animus

23

toward victims of sexual assault. Such conducts are not at all related to any governmental purpose and they are a far deviation from commonly accepted procedures. It's not a single word, not a single act, but a series of conducts that demonstrate Defendants' pattern of deliberate indifference and unconstitutional practice to discourage the vigorous prosecution of violent crimes against sexual assault victims.

118. An individual who alleges that a state actor intentionally treated her differently than other similarly-situated individuals and alleges that there was no rational basis for the difference in treatment, states a viable Fourteenth Amendment Equal Protection Claim.

119. Plaintiff has been deprived of her rights of equal protection under the law – and as of the date of this filing, continues to be deprived of these rights – on account of sexual assault, in violation of the Fourteenth Amendment to the United States Constitution, in that she has been afforded less favorable terms and conditions than victims of other assaults/crimes, and continues to be afforded less favorable terms and conditions. As a consequence, Plaintiff, as a victim of sexual assault, obtained less protective resources of the state compared with victims of other assaults/crimes.

120. The devaluation of sexual assaults burdens a particular set of victims. The laws against violence were not and will not be uniformly enforced. Because the vast majority of victims of sexual assault are women, discriminatory practice has an unjustified disparate impact on women. Rape is the most under-reported crime. 63% of sexual assaults are not reported to police. <Statistics about sexual violence> https://www.nsvrc.org/sites/default/files/publications_nsvrc_factsheet_media-packet_statistics-about-sexual-violence_0.pdf )

121. Discrimination against rape victims puts victims at a unique disadvantage in the criminal justice system, decreasing the rate of reporting rape and increasing the rate of claims withdrawn by victims. <Rape and Sexual Assault in the Legal System> https://www.womenslawproject.org/wp-content/uploads/2016/04/Rape-and-Sexual-Assault-in-the-Legal-System-FINAL.pdf )

122. The acts of Defendants were unnecessary, objectively unreasonable and malicious.

24

1      123.    As a proximate and foreseeable result of Defendants' violations of Plaintiff's

2  Fourteenth Amendment rights, Plaintiff has suffered, is suffering, and will continue to suffer

3  injuries, including but not limited to continued trauma, dissociation, humiliation, emotional

4  distress, anxiety, depression, stigma, and embarrassment.

5

6              **SECOND CAUSE OF ACTION**

7        **Gender-based Civil Conspiracy (42 U.S.C. § 1985)**

8                 **Against all Defendants**

9      124.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

10  the paragraphs above.

11      125.    Starting on Oct 18, 2019 Defendants, in whole or part, conspired among

12  themselves and with others for the purpose of depriving, directly or indirectly, Plaintiff of equal

13  protection under the law with the intent to deny her right to be treated fairly and equally.

14      126.    The conduct described above, when viewed in total, is conscience shocking. Each

15  member of this conspiracy shared the same conspiratorial objective.

16      127.    Defendants engaged in a conspiracy among themselves and with others based on

17  discriminatory animus for the purpose of depriving, directly or indirectly, Plaintiff's right to equal

18  protection under the law in violation of 42 U.S.C. § 1985(3), with the object of that conspiracy

19  being to conceal the fact that the complaints of crime made by female victims, including Plaintiff,

20  are less important to CONCORD PD, CCDA, and SDA than complaints made by similarly-

21  situated male rape victims.

22      128.    Defendants engaged in oral, written, and electronic communications, and/or

23  endorsement and support among themselves and with others regarding: a) their agreement to treat

24  Plaintiff differently; b) actions taken to deter Plaintiff from pursuing the truth and justice; and c)

25  their effort to support each other's unconstitutional actions and discourage vigorous prosecution

26  of sex crimes against women.

27      129.    Defendants conspired among themselves and with others to deprive Plaintiff of

28  equal protection of the laws as alleged in this Complaint based on animosity toward Plaintiff as a

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

woman reporting rape.

130. Defendants' series of omissions and actions described above, when analyzed as a whole using a contextualist approach, permit the inference that Defendants have a meeting of the minds to violate Plaintiff's constitutional rights.

131. Between January and February 2020 CCDA and SDA Officials made multiple untrue statements that were far departure from professional standards, jury instruction, and prosecution guidelines by employing their discriminatory policy towards female rape victims, in order to prevent Plaintiff from exercising her constitutional rights.

132. Defendants, in part or whole, directly or indirectly, have used their control and influence to reduce the number of perpetrators held accountable for rapes.

133. As a result of said conspiracy Plaintiff has suffered, is suffering, and will continue to suffer injuries, including but not limited to continued trauma, humiliation, emotional distress, anxiety, depression, stigma, and embarrassment.

134. Defendants'' failure to prevent or aid in preventing a conspiracy under 42 U.S.C. § 1985 of which the Defendants had knowledge and the power to prevent is also in violation of 42 U.S.C. § 1986.

135. The acts of Defendants were unnecessary, objectively unreasonable and malicious.

## THIRD CAUSE OF ACTION

**Municipal Liability for Unconstitutional Policies, Customs, and Practices (42 U.S.C. § 1983)**

**Against all Defendants**

136. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

137. On and for some time prior to Oct 18, 2019 (and continuing to the present date) Defendants deprived Plaintiff of the rights secured to her by the Fourteenth Amendments to the United States Constitution, in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights of the public in general, and of Plaintiff, and of persons in her

26

class, situation and comparable position in particular, knowingly maintained, enforced and applied officially recognized policies, practices or customs of:

(a) Employing and retaining law enforcement personnel, including , Concord PD Officers, CCDA and SDA Officials, and DOES 1-10, who had dangerous propensities for discriminating against rape victims by failing to follow mission of CONCORD PD, CCDA and SDA, and/or well established laws;

(b) Inadequately supervising, training, controlling, assigning, and disciplining officers, detectives, and other personnel, who the City, Contra Costa and Sonoma County knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(c) Failing or refusing to competently and impartially investigate allegations of misconducts, failing or refusing to enforce established administrative procedures, to ensure victims and community safety, despite Defendants' knowledge of abuse and misconduct;

(d) Having and maintaining an unconstitutional custom of discriminatory under-policing, selective under-enforcement, favoritism toward rapists, and/or hostile provision of services to Plaintiff, which also is demonstrated by inadequate training regarding these subjects, and Defendants have no valid justification for such policies, customs, and practice. The practices of Defendants, were done with a deliberate indifference to individuals' safety and rights; and

(e) Fostering and encouraging an atmosphere of lawlessness, abuse and unconstitutional misconduct, as to encourage their personnel to believe that discriminatory under-policing, selective under-enforcement, and illegal searches and seizures would be tolerated, and to believe that unlawful acts would be overlooked without discipline or other official ramifications.

138. Defendants have demonstrated their deliberate indifference to widespread law enforcement abuses by failing and refusing to impartially investigate personnel complaints, failing to discipline or prosecute personnel who commit acts of dishonesty and misconduct.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

1    139.    By reason of the aforementioned custom and practices of Defendants, Plaintiff was

2    severely injured and subjected to lifetime pain and suffering.

3    140.    Defendants, together with various other personnel, whether named or unnamed,

4    had either actual or constructive knowledge of the deficient policies, practices and customs

5    alleged in the paragraphs above. Despite having knowledge as stated above these Defendants

6    condoned, tolerated and through actions and inactions thereby ratified such policies. Said

7    Defendants also acted with deliberate indifference to the foreseeable effects and consequences of

8    these practice with respect to the constitutional rights of Plaintiff, and other individuals similarly

9    situated.

10    141.    By perpetrating, tolerating and ratifying the outrageous conduct and other

11    wrongful acts, Defendants acted with an intentional, reckless, and callous disregard for Plaintiff's

12    constitutional rights. Defendants, each of their actions were willful, wanton, oppressive,

13    malicious, fraudulent, and extremely offensive and unconscionable to any person of normal

14    sensibilities.

15    142.    Furthermore, the practice implemented and maintained and still tolerated by

16    Defendants, were affirmatively linked to and were a significantly influential force behind the

17    injuries of Plaintiff. Such unconstitutional custom is and will be a threat to justice and community

18    safety.

19

20                          **FOURTH CAUSE OF ACTION**

21    **Municipal Liability – Failure to Train, Supervise, and/or discipline (42 U.S.C. § 1983)**

22                          **Against all Defendants**

23    143.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

24    the paragraphs above.

25    144.    On information and belief, the overwhelming majority of law enforcement

26    personnel who handle sexual assaults remain woefully untrained, and fundamentally biased

27    against sexual assault victims, making assumptions about why and when sexual assault victims

28    behave in certain ways and excusing perpetrator conduct as acceptable and/or "normal" behavior.

145.    While acting under the color of state law and within the course and scope of their employment, Concord PD Officers, CCDA and SDA Officials, and DOES 1-10's unconstitutional practice, deprived Plaintiff's rights secured to her by the Fourteenth Amendment, including her right to be free from discrimination.

146.    The training **policies** of CONCORD PD and CCDA were not adequate to train their personnel, including but not limited to, Concord PD Officers, CCDA and SDA Officials, and DOES 1-10, with regards to understanding crime elements, employing investigative tools, conducting reasonable searches and seizures, prosecuting sexual assaults, selecting unbiased jury, and treating victims equally and fairly. As a direct result, CONCORD PD and CCDA personnel, including, Concord PD Officers, CCDA and SDA Officials, and DOES 1-10, are not able to handle the usual and recurring situations with which they must deal, including treating every crime victim fairly and respectfully. These inadequate training policies existed prior to the date of this incident and continue to this day.

147.    Defendants were deliberately indifferent to the known or obvious consequences of their failure to train and/or supervise their personnel, including, Concord PD Officers, CCDA and SDA Officials, and DOES 1-10, adequately with regards to understanding crime elements, employing investigative tools, conducting reasonable searches and seizures, prosecuting sexual assaults, selecting unbiased jury, and treating victims equally and fairly. This inadequate training includes failing to teach personnel to properly handle sexual assault investigation and prosecution.

148.    Defendants were aware that failure to implement some sort of training and/or supervision with regards to their discriminatory and unlawful practice would result in continuing to have numerous unreasonable officers involved violation of sexual assault victims' constitutional rights annually.

149.    The failure of Defendants to provide adequate training and/or supervision with regards to understanding crime elements, employing investigative tools, conducting reasonable searches and seizures, prosecuting sexual assaults, selecting unbiased jury, and treating victims equally and fairly, caused the deprivation of the Plaintiff's rights by, Concord PD Officers,

1     CCDA and SDA Officials, and DOES 1-10. In other words, Defendants' failure to train and/or

2     supervise is so closely related to the deprivation of the Plaintiff's rights as to be the moving force

3     that caused the ultimate injury.

4        150.     By failing to achieve adequate training and/or supervision, Concord PD Officers,

5     CCDA and SDA Officials, and DOES 1-10, acted with an intentional, reckless, and callous

6     disregard for Plaintiff's constitutional rights. Concord PD Officers, CCDA and SDA Officials,

7     and DOES 1-10, each of their actions was willful, wanton, oppressive, malicious, fraudulent, and

8     extremely offensive and unconscionable to any person of normal sensibilities.

9

10                             **FIFTH CAUSE OF ACTION**

11            **Violation of Cal. Const. Art. I, § 7 – Equal Protection**

12                           **Against all Defendants**

13        151.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in

14     the paragraphs above.

15        152.     Defendants violated Plaintiff's civil rights by having a widespread practice and/or

16     custom of discriminatory under-policing and selective under-enforcement, when enforced, caused

17     a constitutional deprivation to Plaintiff, although not authorized by written law or express

18     municipal policy, was so permanent and well settled as to constitute a custom or usage with the

19     force of law.

20        153.     Defendants' custom was intentional and, when enforced, had a discriminatory

21     impact on sexual assault victims. Plaintiff's case was not isolated incident. Plaintiff received

22     disparate treatment relative to victims of other violent crimes. Defendants set out to make

23     reporting and pursuing investigation of rapes as unpleasant and difficult as possible.

24        154.     The constitutional injury inflicted by Defendants was caused by the persons with

25     final policymaking authority at the City, Contra Costa and Sonoma County, CONCORD PD,

26     CCDA, and SDA.

27        155.     Defendants knew about the above-described conducts and facilitated them,

28     approved them, condoned them, and/or turned a blind eye to the conducts and systematic failure.

156.     The above-described conducts of Defendants constitute a violation of Article 1, § 7 of the California Constitution.

## SIXTH CAUSE OF ACTION

### Violation of Cal. Const. Art. I, § 28 (b) – Victims' Bill of Rights

### Against all Defendants

157.     Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

158.     California's Constitution protects the rights of crime victims. Defendants have violated the rights of Plaintiff to be treated with fairness, respect, and dignity, by among other things:

    a.  Subjecting Plaintiff to re-traumatization, demeaning and humiliating interrogation tactics, including inappropriately questioning her reactions without presence of victim advocate;

    b.  Routinely and inappropriately impugning the credibility of sexual assault victims, including Plaintiff;

    c.  Conducting illegal searches and seizures, with no reasonable cause;

    d.  Telling Plaintiff that the crime perpetrated against her was not actually criminal;

    e.  Treating Plaintiff like suspect, rather than victim;

    f.  Willfully failing to inform Plaintiff of her rights as a crime victim; and

    g.  Maliciously using coercion and purported reasons to deter Plaintiff from exercising her constitutional rights.

159.     Defendants' conducts violated Plaintiff's rights that set forth in California Constitution she was entitled (a) to be treated with fairness and respect for her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the criminal justice process. (b) to be informed of the rights enumerated in California Constitution Art. I, § 28 (b).

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

## SEVENTH CAUSE OF ACTION

### Negligent Supervising, Disciplining, and Retaining Employees

### Against all Defendants

160.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

161.    Defendants customarily failed to properly supervise their officers and deputies, and address citizen complaints reflecting that they were deliberately indifferent to citizens' constitutional rights.

## EIGHTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against all Defendants

162.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

163.    Except for homicide, rape is the most serious violation of a person's body because it deprives the victim of both physical and emotional privacy and autonomy. As a rape victim, Plaintiff was particularly susceptible to emotional distress at that time but Defendants willfully engaged in acts and omissions alleged herein with a discriminatory intent or a reckless disregard for the probability of aggravating the emotional distress that Plaintiff was already suffering. Such ill treatment is not what Plaintiff came forward for. Plaintiff certainly didn't walk into a police station thinking her trauma would be lifted to another level by law enforcement personnel.  Law enforcement personnel's response to sexual assault has made Plaintiff feel like being murdered would be better than being raped.

164.    After Plaintiff gathered her courage to step forward and identify her assailant she has been re-traumatized again and again at the hands of law enforcement personnel. The trauma Plaintiff has experienced at the hands of Defendants prevented her from having any kind of normal life.

165.    As a direct and proximate result of the Defendants' outrageous and unlawful

conducts as described herein, Plaintiff has suffered and/or continue to suffer loss of trust, comfort, protection, and support, humiliation, mental anguish, nervous shock, severe emotional distress, and other special and general damages in amounts according to proof.

166. Punitive damages should be assessed against Defendants for the purpose of punishment and for the sake of example.

## NINTH CAUSE OF ACTION

### Violation of Unruh Civil Rights Act (Cal. Civil Code § 51)

### Against all Defendants

167. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

168. Cal. Civil Code § 51, also known as Unruh Civil Rights Act, states that all persons within the jurisdiction of this state are free and equal, and are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

169. Defendants' policies, practices, and customs complained of herein violated Plaintiff's rights to be free from discrimination and unreasonable searches and seizures, rights to privacy, and victims' rights as secured by Article I, § 1, § 7, § 13, § 28(b) of the California Constitution and directly and proximately damaged Plaintiff as herein alleged, entitling Plaintiff to recover a minimum of $4,000 for each and every offense pursuant to California Civil Code § 52(a) and § 52.1, in addition to other damages.

## DECLARATORY RELIEF SOUGHT

170. Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

171. Plaintiff respectfully prays for a declaratory judgment that Defendants, and each of them, have engaged in a pattern or practice of conduct that violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, Art. I, §§ 1, 7, 13, 28(b) of the

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

California Constitution, Cal. Civil Code § 52.1, and/or California common law.

## **INJUNCTIVE RELIEF SOUGHT**

172.    Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

173.    Plaintiff prays for a permanent injunction compelling Becton, Ravitch, and/or CCDA, SDA to file criminal charges against Weamer.

174.    Plaintiff prays for a permanent injunction disbarring CHRISTOPHER WALPOLE, COLLEEN GLEASON, ANNE MASTERSON, and LAURA PASSAGLIA.

175.    Plaintiff also prays that the Court issue a permanent injunction against Defendants ordering them to:

        a.  Properly train and supervise government employees handling sexual assault cases or evidence;

        b.  Establish written policy and procedure manual for investigation and prosecution of sexual assaults;

        c.  Require and enforce trauma-informed approaches to investigation and prosecution of sexual assault cases;

        d.  Increase prosecution rate of sexual assault to 50%;

        e.  Treat sexual assault cases with the same urgency and importance afforded to other types of crimes;

        f.  Provide adequate resources for investigation and processing of sexual assault cases;

        g.  Treat victims of sexual assault with the same respect and attention to their cases as victims of other crimes; and

        h.  Accurately and publicly report data reflecting the number of sexual assaults reported, investigated, prosecuted, and processed to conclusion within the criminal justice system on a bi-annual basis.

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

## **PRAYER**

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1.  For general damages according to proof;

2.  For special damages according to proof;

3.  For exemplary damages as provided by law, in an amount to be proved against each individual Defendant;

4.  For interest;

5.  For civil penalties pursuant to Civil Code § 52;

6.  For attorney's fees pursuant to 42 U.S.C. § 1988 and Civil Code §§ 52 and 52.1;

7.  For reasonable costs of this suit;

8.  For treble damages under Civil Code § 52.1;

9.  For such other and further relief as the Court may deem just, proper, and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: Mar 31, 2020

JANE DOE

Plaintiff in Pro Se

**EXHIBITS TO COMPLAINT**

**TABLE OF CONTENTS**

| Exhibit # | Document | Pages |
|---|---|---|
| 1 | Gov claim rejection letter from City of Concord | 38 |
| 2 | Gov claim rejection letter from County of Contra Costa | 40 |
| 3 | Gov claim rejection letter from County of Sonoma | 42 |

COMPLAINT FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF

EXHIBIT 1

City of Concord
1950 Parkside Drive, MS-08
Concord, California 94519-2578
Fax (925) 671-3169

Office of the City Attorney
Telephone (925) 671-3160



Susanne Meyer Brown
City Attorney

Margaret Kotzebue
Senior Assistant City Attorney

Joshua K. Clendenin
Senior Assistant City Attorney

Lance Bayer
Special Counsel

February 3, 2020


11151 Valley Boulevard, Suite 4886
El Monte, CA 91734

    *Re:*    *Notice of Rejection of Claim against the City of Concord*

Dear Ms.

Pursuant to the authority vested in me by the City Council, you are hereby notified that the amended claim received January 16, 2020, which refers to an incident that took place on or about October 18, 2019, in an unknown amount, is hereby rejected in its entirety.

### WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code Section 945.6. This warning does not extend the statute of limitations involving any federal cause of action.

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

Very truly yours,

JOSHUA K. CLENDENIN
Senior Assistant City Attorney

JKC:lrm

EXHIBIT 2

# Contra
# Costa
# County



March 5, 2020

P.O. Box 4886
El Monte, CA 91734

Re:    Claimant:
        Insured:    Contra Costa County
        Date of Loss: 1/7/20
        Claim #:    86109

Dear

The above captioned matter was referred to my office for investigation and handling on
behalf of the Contra Costa County Board of Supervisors and the District Attorney's
Office. Please note that this letter is not intended to waive any statutory requirements as
set forth in the California Government Code Sections 910-913, nor does our investigation
of this matter constitute any admission of negligence of liability.

This letter is to provide you with a response to your claim that was received by the Clerk
of the Board on 1/24/20. Your claim filing states that Deputy District Attorneys failed to
perform their duties to prosecute a suspect accused of rape, and that your civil rights were
violated by deterring you from pursuing justice.

Based on the information provided by the DA's office, several factors went into their
decision to not pursue charges in this case. Those factors include that the sex appeared
consensual, that there was no corroborating evidence that the rape occurred, and delayed
reporting.

As you may know, District Attorneys have to weigh the probability of a conviction
before they make the decision to move forward with prosecuting a case. In this case, the
decision was made to decline prosecution as the probability of a conviction was
extremely low.

Accordingly, the District Attorney's office acted within the scope of their appointed
duties as criminal prosecutors. As such, there is no negligence on the part of the County
and we must respectfully deny your claim. If you have any additional information you
wish to discuss, please feel free to call me.

EXHIBIT 3



Opportunity. Diversity. Service.

COUNTY OF SONOMA
HUMAN RESOURCES DEPARTMENT



Employment • Classification • Employee Relations • EEO • Training • Risk Management

March 24, 2020

11151 Valley Blvd #4886
El Monte, CA 91734

**Subject:** **NOTICE OF REJECTION OF CLAIM**
**Claim of:**
**Date of Incident:** 02/10/2020
**Claim Number:** 2020006

Dea

The claim you presented to the Sonoma County Board of Supervisors on February 11, 2020 has been referred to the Risk Manager pursuant to Board of Supervisors Resolution No. 66798 and California Government Code Section 935.4.

NOTICE IS HEREBY GIVEN that said claim was rejected on March 24, 2020.

## WARNING

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See California Government Code Section 945.6

You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately.

This notice applies only to causes of action arising under California law for which a claim is mandated by the California Government Tort Claims Act, California Government Code Sections 900 et seq. Other causes of action, including those arising under federal law, may have shorter time limitations for filing.

If you would like to discuss your claim further, please call Reesha Ruel in Risk Management at (707) 565-3563.

Sincerely,

Janell Crane
Janell Crane
Risk Manager

---

575 Administration Drive, Suite 116B • Santa Rosa, CA 95403 • Telephone (707) 565-8059 • Fax (707) 565-3770 • www.sonoma-county.org



Scanned with Car

FILED

APR -9 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

JD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**CV20    2432**

Jane Doe

Case No. C

CONSENT OR DECLINATION
TO MAGISTRATE JUDGE
JURISDICTION

Plaintiff(s)

v.

City of Concord; et al

Defendant(s).

**INSTRUCTIONS:** Please indicate below by checking **one** of the two boxes whether you (if you are the party) or the party you represent (if you are an attorney in the case) choose(s) to consent or decline magistrate judge jurisdiction in this matter. Sign this form below your selection.

☐ <u>**Consent**</u> **to Magistrate Judge Jurisdiction**

   In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily <u>**consent**</u> to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment. I understand that appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.

**OR**

☑ <u>**Decline**</u> **Magistrate Judge Jurisdiction**

   In accordance with the provisions of 28 U.S.C. § 636(c), I <u>**decline**</u> to have a United States magistrate judge conduct all further proceedings in this case and I hereby request that this case be reassigned to a United States district judge.

DATE: ___3/31/2020___     NAME: Jane Doe

COUNSEL FOR
(OR "PRO SE"): _____

_____
*Signature*



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE DOE,

             Plaintiff,

    v.

CITY OF CONCORD,

             Defendant.

Case No. <u>20-cv-02432-JD</u>

**ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND ADR DEADLINES**

     IT IS HEREBY ORDERED that this action is assigned to the Honorable James Donato. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order and all other documents specified in <u>Civil Local Rule 4-2.</u> Counsel must comply with the case schedule listed below unless the Court otherwise orders.

     IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by <u>ADR Local Rule 3.</u> Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at <u>http://www.cand.uscourts.gov/adr</u>. A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

**CASE SCHEDULE – ADR MULTI-OPTION PROGRAM**

| Date | Event | Governing Rule |
|------|-------|----------------|
| 4/9/2020 | Complaint Filed | |
| 6/18/2020 | *Last day to:<br>• meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | <u>FRCivP 26(f) &</u><br><u>ADR L.R.3-5</u> |
| | • file ADR Certification signed by Parties and Counsel (form available at <u>http://www.cand.uscourts.gov</u>) | <u>Civil L.R . 16-8(b) &</u><br><u>ADR L.R. 3-5(b)</u> |
| 7/2/2020 | **Last day to file Rule 26(f) Report, complete initial disclosures or state objection in Rule 26(f) Report and file Case Management Statement per Standing Order re Contents of Joint Case Management Statement<br><br>(also available at <u>http://www.cand.uscourts.gov</u>) | <u>FRCivP 26(a) (1)</u><br><u>Civil  L.R . 16-9</u> |
| 7/9/2020 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) at 10:00 AM in:<br><br>Courtroom 11, 19th Floor<br>Phillip Burton Federal Building<br>450 Golden Gate Avenue<br>San Francisco, CA 94102 | <u>Civil L.R . 16-10</u> |

\* If the Initial Case Management Conference is continued, unless otherwise ordered this deadline  is continued to 21 days in advance of the Initial Case Management Conference.

\*\* If the Initial Case Management Conference is continued, unless otherwise ordered this deadline is continued to 7 days in advance of the Initial Case Management Conference.

# STANDING ORDER FOR ALL JUDGES
## OF THE NORTHERN DISTRICT OF CALIFORNIA
## CONTENTS OF JOINT CASE MANAGEMENT STATEMENT

All judges of the Northern District of California require identical information in Joint Case Management Statements filed pursuant to Civil Local Rule 16-9. The parties must include the following information in their statement which, except in unusually complex cases, should not exceed ten pages:

1. <u>Jurisdiction and Service</u>: The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.

2. <u>Facts</u>: A brief chronology of the facts and a statement of the principal factual issues in dispute.

3. <u>Legal Issues</u>: A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.

4. <u>Motions</u>: All prior and pending motions, their current status, and any anticipated motions.

5. <u>Amendment of Pleadings</u>: The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.

6. <u>Evidence Preservation</u>: A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. *See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

7. <u>Disclosures</u>: Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26, and a description of the disclosures made.

8. <u>Discovery</u>: Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.

9. <u>Class Actions</u>: If a class action, a proposal for how and when the class will be certified, and whether all attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.

10. <u>Related Cases</u>: Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. <u>Relief</u>: All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.

12. <u>Settlement and ADR</u>: Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.

13. <u>Consent to Magistrate Judge For All Purposes</u>: Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment. ___ Yes ___ No

14. <u>Other References</u>: Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>: Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.

16. <u>Expedited Trial Procedure</u>: Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64 Attachments B and D.

17. <u>Scheduling</u>: Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.

18. <u>Trial</u>: Whether the case will be tried to a jury or to the court and the expected length of the trial.

19. <u>Disclosure of Non-party Interested Entities or Persons</u>: Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. In any proposed class, collective, or representative action, the required disclosure includes any person or entity that is funding the prosecution of any claim or counterclaim.

20. <u>Professional Conduct</u>: Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**STANDING ORDER FOR CIVIL CASES BEFORE JUDGE JAMES DONATO**

**INTRODUCTION**

This Standing Order is a guide to counsel and parties on pretrial practices in civil cases before Judge Donato. Counsel are required to read and comply with this order, this Court's Standing Orders for Discovery in Civil Cases and Civil Jury Trials, and the Northern District's Civil Local Rules.

**SERVICE OF THIS ORDER**

1. The parties are reminded that this Standing Order is included in the "Supplementary Material" that must be served in accordance with Civil Local Rules 4-2 and 16-2.

**CASE MANAGEMENT CONFERENCES**

2. Civil case management conferences are held on Thursdays at 10:00 a.m. in Courtroom 11, 19th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California.

3. The parties must file a joint case management statement addressing the standardized items required by the Standing Order for All Judges of the Northern District of California: Contents of Joint Case Management Statements. The joint statement must be filed **at least seven calendar days** prior to the case management conference. Failure to file a joint statement must be accompanied by a signed declaration explaining the grounds for that failure. Absent good cause, the parties may be subject to sanctions. If either party is not represented by

counsel, separate statements may be filed, but only after the parties have made a good faith effort to prepare a joint statement.

4.    In proposing a case schedule, the parties should agree on a trial date and work backward from that date to ensure adequate time for dispositive and *Daubert* motions, class certification motions, expert discovery and other events.  As a general rule, counsel should budget no more than 18 months between the initial case management conference and trial.  Counsel requesting longer pretrial periods must be prepared to justify that request at the initial case management conference.  A trial date typically will be assigned at the initial case management conference.  Once assigned, the trial date will not be changed or continued absent good cause in the interest of justice.  Counsel and parties should assume that the trial date will not be moved.

5.    For parties with counsel, each party must be represented at the case management conference by **lead counsel** prepared to address all pertinent matters and with authority to enter stipulations and make admissions.  Failure of lead counsel to appear may result in sanctions.  For parties without counsel, the party is expected to appear.

6.    **Telephonic appearances are rarely permitted at case management conferences or motion hearings, except in exceptional circumstances and with the Court's prior approval issued at least three court days before the appearance date.**  A conflict with another court date scheduled after a date set by this Court is not an exceptional circumstance.  If a party or counsel has a good-faith basis for making a request to appear by telephone, it should file the request on the docket.  Do not call the Court's Courtroom Deputy with those requests.

7.    Any request to reschedule a case management conference must be made in writing, by stipulation if possible, not less than 10 calendar days before the conference date.  Good cause must be shown.  The conference date will not be rescheduled unless the Court grants the request.  Parties cannot change the date by stipulation.

8.    Pursuant to Federal Rule of Civil Procedure 26(d)(1), formal discovery should not be served or initiated by any party until after the parties have conferred as required by FRCP 26(f), except by stipulation or court order, or as provided for in FRCP 26(d)(2) or other rules.  The Court expects that as soon as any party reasonably anticipates or knows of litigation, it will take the

necessary, affirmative steps to preserve evidence related to the issues presented by the action, including, without limitation, interdiction of any document destruction programs and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material.

## ELECTRONIC CASE FILING − CHAMBERS COPIES

9.      In addition to filing papers electronically, the parties are required to lodge for chambers **one** paper copy of the following:  (a) complaints; (b) notices of removal; (c) case management conference statements; (d) stipulations; (e) all motion papers, including the opening, opposition, and reply briefs, as well as any supporting declarations and exhibits; and (f) discovery dispute letters that are filed pursuant to this Court's Standing Order for Discovery in Civil Cases. Counsel should not submit chambers copies of any other documents that are electronically filed.

10.     All chambers copies must be **double-sided**, three-hole punched at the left margin and marked with the ECF stamp (case number, document number, date and page number).  These printed copies should be marked "Chambers Copy -- Do Not File" and placed in an envelope clearly labeled with the judge's name and case number.  The copies must be delivered in accordance with Civil Local Rule 5-1(e)(7).  For voluminous filings, chambers would appreciate the use of binder clips rather than staples, or submission in three-ring binders.  For documents with multiple attachments (*e.g.,* declarations with exhibits, requests for judicial notice and so on), please use side tabs that clearly separate each attached document.  For pretrial materials, please follow this Court's Standing Order for Civil Jury Trials.

## SETTING MOTIONS FOR HEARING

11.     The civil law and motion calendar is called on Thursdays at 10:00 a.m. in Courtroom 11.  Counsel need not request a motion hearing date and may notice non-discovery motions for any Thursday (excepting holidays) at 10:00 a.m. consistent with the 35-day notice period in Civil Local Rule 7-2(a) or other appropriate timeline.  The Court may vacate the hearing and rule on the papers, or reset the hearing date as its calendar requires.

12.     Counsel typically will have up to 15 minutes of oral argument time per side.  The Court generally uses argument to ask questions and counsel are expected to be fully prepared to

discuss applicable law and the facts in the case. Argument time will likely be extended for more complex cases and motions.

13.     The Court has a strong commitment to supporting the development of our next generation of trial lawyers. Parties and senior counsel are encouraged to give newer practitioners the opportunity to argue in court. To that end, the Court will typically guarantee oral argument on any motion handled by a lawyer with 6 or fewer years of experience. The Court should be advised that a newer lawyer is doing the argument well in advance of the hearing date.

## FORM OF SUBMISSIONS

14.     On summary judgment motions, joint statements of undisputed facts are not required but are helpful if completely agreed upon. Separate statements of "undisputed facts" may **not** be filed. *See* Civil L.R. 56-2.

15.     Reply papers should not raise new points that could have been addressed in the opening motion or brief. Sur-replies are not permitted. *See* Civil L.R. 7-3(d).

16.     The title of a submission must be sufficiently descriptive to alert the Court to the relief sought; for example, please do not bury a request for continuance in the body of a memorandum.

17.     All submissions filed with the Court must include the date and time of the hearing or conference on the cover sheet.

18.     **Except for summary judgment and class certification motions, opening and opposition briefs may not exceed 15 pages, and reply briefs may not exceed 10 pages.** For summary judgment and class certification motions, opening and opposition briefs may not exceed 25 pages, and reply briefs may not exceed 15 pages.

19.     The parties should not ask the Court for an order where one is not needed, *e.g.,* stipulations of dismissal under FRCP 41(a)(1). Those requests will be disregarded.

20.     The parties are reminded that they must inform the Court of any potentially related actions pending in this District or any other federal or state court in accordance with Civil Local Rules 3-12 and 3-13.

**MOTION ADVICE**

21.     Counsel should use their best judgment in deciding whether and when to bring a motion.  Not every case warrants a motion to dismiss or summary judgment.  For summary judgment in particular, counsel should carefully evaluate the extent to which fact disputes are genuine and material.  Summary judgment motions that involve disputed material facts will usually be denied promptly in a short order.

22.     As effective lawyers know, persuasive written advocacy is focused, plainly stated and supported by accurate and reliable authority.  Counsel should spare no effort to ensure that their papers are succinct and clear, and should present their arguments in descending order of strength.  Arguments buried in footnotes or raised with little authority or discussion will generally not be considered by the Court.  For example, an argument that the Court lacks personal jurisdiction over a defendant or that a party lacks standing should not be raised in a footnote or a short paragraph at the end of a brief.  If counsel believes a serious question or issue should be decided by the Court, counsel should argue it appropriately.

23.     All case citations and factual statements must be completely accurate.  A citation to a case, statute or other authority is counsel's representation to the Court that the authority stands for the proposition asserted and is good law.  A quotation of a case or other authority is counsel's representation that the quoted language is complete and present in the authority cited.  Counsel must ensure that use of ellipses or elisions in quotes does not mislead the Court or misrepresent the substance of the holding or other authority.  Counsel's representations of facts are subject to the same requirements of completeness and accuracy.  Misrepresentations of law or fact, however subtle, may result in sanctions and a referral to the District's Standing Committee on Professional Conduct.

**DISCLOSURES**

24.     FRCP 26 requires certain automatic disclosures and requires them to be made in a timely manner.  Under FRCP 37(c), materials that are undisclosed or disclosed late will likely be excluded from use at trial or summary judgment unless permitted otherwise by the Court.

# SEALED DOCUMENTS

25.     Any party seeking to file a document under seal must carefully review and comply with Civil Local Rule 79-5, except as that Rule is modified here for civil cases before Judge Donato.

26.     The declaration and proposed order required by Civil Local Rule 79-5(d)(1) must establish, with reference to appropriate authority, that each of the following requirements is met:

a.      The document or document portion is "privileged, protectable as a trade secret or otherwise entitled to protection under the law." Civil L.R. 79-5(b). (Note that "[r]eference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civil L.R. 79-5(d)(1)(A).)

b.      The "strong presumption of access to judicial records" may be rebutted under the appropriate legal standard, *i.e.*, the "good cause" or "compelling reasons" standard. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178-82 (9th Cir. 2006) (discussing "good cause" and "compelling reasons" standards with respect to dispositive and non-dispositive motions). The declaration and proposed order must identify the appropriate standard and articulate why the materials to be sealed satisfy that standard. The reasons provided must be specific to the portions of the document sought to be sealed; "[s]imply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden." *Id.* at 1184. Generic, non-specific reasons are not sufficient under either standard. *See id.* at 1180.

27.     Any proposed order under Civil Local Rule 79-5(d)(1)(B) must include in the table for each item sought to be sealed the filer's reasons for seeking sealing of the material, along with citations to the relevant declarations.

28.     Any declaration by a Designating Party under Civil Local Rule 79-5(e)(1) must include a **new proposed order in the tabular format required by Civil Local Rule 79-5(d)(1)(B)** that includes the Designating Party's reasons for sealing the material. In addition, any declaration by a Designating Party under Civil Local Rule 79-5(e)(1) that seeks less extensive

6

sealing than its associated administrative motions to seal must be accompanied by **revised redacted and unredacted versions of the documents sought to be sealed** that comply with the requirements of Civil Local Rule 79-5(d)(1)(C) and (D), including the requirement that the portions sought to be sealed must be clearly marked on the unredacted version.

29.     Any declaration, whether under Civil Local Rule 79-5(d)(1)(A) or (e)(1), that claims confidentiality obligations to a non-party as a basis for sealing a document or a portion of a document must be served on the non-party as set forth in Civil Local Rule 79-5(e).  The non-party must also be notified that it must comply with the procedures set forth in that rule for Designating Parties, except that the non-party will have four days from service of the declaration -- rather than four days from the filing of the administrative motion to seal -- to file a declaration under Civil Local Rule 79-5(e)(1).

30.     All portions of documents sought to be sealed must be clearly marked on the unredacted versions of documents submitted to the Court, as required by Civil Local Rule 79-5(d)(1)(D).  The Court emphasizes this requirement, because it is usually ignored.

31.     For cases where voluminous or multiple administrative motions to seal would be filed if normal procedures were followed, parties (and any non-parties with potentially sealable information) must, upon the completion of briefing, jointly file a new, combined administrative motion to seal for all requests where sealing is unopposed.  If any requests to seal are opposed, each party or non-party making an opposed request should file a single combined administrative motion to seal covering all of their opposed requests.  If the parties anticipate that this paragraph will apply to a round of briefing, they may indicate in the initial motion to file under seal that accompanies a brief or other document as it is lodged under seal on the docket, that a more fulsome and revised motion to seal will be forthcoming after the completion of briefing pursuant to this paragraph of the Standing Order.  The later combined motion to seal that is filed should clearly identify the docket numbers of the prior motions to seal that are superseded by the combined motion.  If the Court determines that the parties should have followed this procedure but did not, it will deny the motions to seal without prejudice.

## COMMUNICATIONS WITH CHAMBERS

32.     Please do not send any letters to the Court except for discovery disputes as detailed in the Court's Standing Order for Discovery in Civil Cases. When corresponding with the Court by letter, always identify the party you represent. **Do not messenger anything directly to chambers.** Deliveries must be directed to the Clerk's office and are never accepted by chambers personnel.

33.     You may contact the Courtroom Deputy, Lisa Clark, at (415) 522-2066 with appropriate inquiries. Except for the letters described above, please do not attempt to make contact by telephone or any other ex parte means with chambers staff.

## COURTROOM CONDUCT

34.     Counsel and parties are required to conduct themselves with the highest level of decorum and respect for each other and Court and chambers personnel while in the courtroom. Cell phones and all other electronic devices must be turned off; no texting, e-mailing, or other electronic communications are permitted. While sitting in the gallery, counsel and parties should avoid conversation unless absolutely necessary for the appearance. Once a case is called and counsel appear, all communications must be directed only to the Court. Counsel shall not address each other directly unless the Court expressly permits them to do so. All statements and citations made to the Court during oral argument will be held to the same standards stated above in Paragraph 23.

## CROSS REFERENCE TO OTHER STANDING ORDERS

35.     The Court has separate standing orders for civil jury trials, discovery in civil cases, and patent cases. They are available for review at the website for the United States District Court for the Northern District of California at www.cand.uscourts.gov/jdorders.

**IT IS SO ORDERED.**

Dated:  January 5, 2017

_____
JAMES DONATO
United States District Judge