1   JANE DOE

2   11151 Valley Blvd #4886,

3   El Monte, CA 91734

4

5   Plaintiff in Pro Se

6

7

8                  **UNITED STATES DISTRICT COURT**

9                **NORTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  JANE DOE, | No. 3:20-cv-02432-JD |
| 12         Plaintiff, | |
| 13      v. | **SECOND AMENDED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| 14  CITY OF CONCORD; CITY OF COTATI; COUNTY OF CONTRA COSTA; COUNTY OF SONOMA; GUY SWANGER; TAMRA ROBERTS; CODY HARRISON; RENELLE-REY VALEROS; DIANA BECTON; CHRISTOPHER WALPOLE; COLLEEN GLEASON; JILL RAVITCH; ANNE MASTERSON; LAURA PASSAGLIA; BENNET KNIGHT; BAUDELIA GALLO; and DOES 1 - 10, inclusive, | |
| | **JURY TRIAL IS HEREBY DEMANDED** |
|         Defendants. | |

21

22      Plaintiff JANE DOE ("Plaintiff") alleges and complains the following, on information and

23  belief except for information identified as being based on personal knowledge, which allegations

24  are likely to have evidentiary support after a reasonable opportunity for further discovery.

25                       **<u>INTRODUCTION</u>**

26     1.   This is a civil rights complaint for damages and declaratory and injunctive relief arising

27  from Defendants' violations of Plaintiff's fundamental rights to be free from discrimination,

28  among others guaranteed by the United States Constitution, California Constitution, and

California laws. Defendants violated these rights when they conspired and practiced discriminatory under-policing and selective under-enforcement against rape victims, including Plaintiff.

2.     This action stems from law enforcement personnel's response to a heinous crime - rape. This action is about the discriminatory practice and ill will of law enforcement personnel, their betrayal of public trust, and failure to protect residents from victimization by rapists. Our law enforcement's response to rapes sends a catastrophic message to the whole of our society. To rape victims: bringing a complaint is useless. To rapists: you're allowed to rape as many women as you want and there will be no consequence!

3.     Plaintiff's constitutional injuries have occurred since the first minute she came into contact with law enforcement personnel who were supposed to support and protect her. Plaintiff was not only a rape victim but also a victim of discrimination, uneven enforcement of law, and law enforcement personnel's misconduct.

4.     Without the ability to hold law enforcement accountable for its responses, rape victims, including Plaintiff, will be far too likely to face hostility, disinterest, and concrete harms as a result of their interactions with law enforcement. The people who mishandle rape cases are just as bad as the perpetrators themselves because they are perpetuating rapes.

5.     Plaintiff has been injured by Defendants' willful refusal to provide the accommodations, advantages, privileges, and facilities of an unbiased and adequate sexual assault investigation, and effective prosecution. Plaintiff has endured multiple traumas; first, the criminal assault itself; second, a discriminatory, unconstitutional, unfair, and unequal treatment by the people sworn to protect the public - the government officials and actors who have instead discredited, dismissed, and denigrated Plaintiff as a rape victim; and finally, the additional trauma of watching her case and hope for justice languish and ultimately vanish, due to the sabotage, inaction and refusal to act by law enforcement personnel. Plaintiff's attacker will not see a day of consequence for his violent assault against her and it was a byproduct of the law enforcement in a discriminatory manner.

6.     As described in more detail below, Defendants' (a) actions, (b) patterns of behavior, (c)

2

history of decision-making, and (d) departures from normal procedures in the course of their response to sexual assaults, demonstrate ongoing, intentional discrimination against rape victims, including Plaintiff. Specifically, Defendants have committed constitutional violations by implementing, promoting, or maintaining policies, practices, and/or customs that:

a. Refuse to implement and/or ignore proper training and supervision of government employees handling sexual assault cases;

b. Allocate more resources to other violent crimes than to sexual assaults;

c. Refuse to treat rape victims' testimony as adequate evidence regarding lack of consent;

d. Credit suspects' account over victims' version of story;

e. Fail to arrest and charge known perpetrators of sexual assault, which resulted in extremely low arrest and prosecution rate compared to other crimes;

f. Disproportionately refuse to thoroughly investigate sexual assault cases;

g. Disproportionately refuse to prosecute perpetrators of sexual assault;

h. Subject Plaintiff and other rape victims to future assaults by known perpetrators by failing to act on, investigate, and prosecute prior sexual assaults;

i. Treat sexual assault cases with less urgency and importance than is afforded to other types of violent crimes;

j. Treat victims of sexual assault, including Plaintiff, with less respect and devote less attention to their cases than to cases of other crimes (collectively referred to herein as the "Policies").

7.    Defendants' unconstitutional and discriminatory conduct subjects Plaintiff and other victims of sexual assault to continued risk at the hands of perpetrators who are never held accountable.

## **PARTIES**

8.    Plaintiff, JANE DOE ("Plaintiff"), is a resident of County of Los Angeles, State of California. At all relevant and material times, Plaintiff was a visitor in the County of Sonoma and Contra Costa, State of California.

9.     Defendant, City of Concord, is a public entity and municipal corporation duly organized and existing under and by virtue of the laws of the State of California.  Concord Police Department ("Concord PD") is an operating department of the City of Concord. The City of Concord is responsible for the training, policies, procedures, and actions of Concord PD and its employees. The City of Concord has direct supervisory authority over Concord PD and its officers, and Concord PD policies are City policies for purposes of municipal liability.

10.     Defendant, City of Cotati, is a public entity and municipal corporation duly organized and existing under and by virtue of the laws of the State of California.  Cotati Police Department ("Cotati PD") is an operating department of the City of Cotati. The City of Cotati is responsible for the training, policies, procedures, and actions of Cotati PD and its employees. The City of Cotati has direct supervisory authority over Cotati PD and its officers, and Cotati PD policies are City policies for purposes of municipal liability.

11.     Defendant, County of Contra Costa ("Contra Costa County"), is an incorporated municipality organized and existing under the laws of the State of California and wholly located within the State of California. Contra Costa County District Attorney's Office ("CCDA") is an operating department of Contra Costa County. Contra Costa County is responsible for the training, policies, procedures, and actions of CCDA and their employees. Contra Costa County has direct supervisory authority over CCDA and their personnel, and CCDA policies are County policies for purposes of municipal liability.

12.     Defendant, County of Sonoma ("Sonoma County"), is an incorporated municipality organized and existing under the laws of the State of California and wholly located within the State of California. Sonoma County District Attorney's Office ("SDA") is an operating department of Sonoma County. Sonoma County is responsible for the training, policies, procedures, and actions of SDA and their employees. Sonoma County has direct supervisory authority over SDA and their personnel, and SDA policies are County policies for purposes of municipal liability.

13.     <u>Defendant Concord PD Officers/personnel</u>: At all times herein mentioned, Plaintiff is informed and believes, and thereon alleges that individual Defendants Chief of Police Guy

4

SWANGER ("SWANGER"), Detective Renelle-Rey VALEROS, ID 505 ("VALEROS"),

Sergeant Cody HARRISON, ID 335 ("HARRISON") and Lieutenant Tamra ROBERTS, ID 422

("ROBERTS"), were residents of Contra Costa County and were civilian employees, agents

and/or representatives of Concord PD.  At all times relevant hereto, said Defendants were acting

within the course and scope of their employment as officers, lieutenants, detectives, and/or

civilian employees of Concord PD, a department and subdivision of Defendant City of Concord.

At all times relevant herein, said Defendants were acting under color of law, under the color of

statutes, ordinances, regulations, policies, customs, practices and usages of the City of Concord,

Concord PD, and/or the State of California. At all times relevant hereto, Plaintiff alleges

SWANGER served as the highest official for Concord PD and made the City of Concord and

Concord PD policy for that office. As Chief of Police, SWANGER holds the command and

policy making position with regards to Concord PD.

14.   Defendant Cotati PD Officers/personnel: At all times herein mentioned, Plaintiff is

informed and believes, and thereon alleges that individual Defendants Bennet KNIGHT

("KNIGHT") and Baudelia GALLO ("GALLO") were residents of Sonoma County and were

civilian employees, agents and/or representatives of Cotati Police Department ("Cotati PD"). At

all times relevant hereto, KNIGHT and GALLO were acting within the course and scope of his

employment as police officer, sergeant, and/or civilian employees of Cotati PD.

15.   Defendant CCDA Officials: At all times herein mentioned, Plaintiff is informed and

believes, and thereon alleges that individual Defendant District Attorney Diana BECTON

("BECTON") is an elected public official. Individual Defendants Assistant District Attorney

Christopher WALPOLE ("WALPOLE"), and Deputy District Attorney Colleen GLEASON

("GLEASON"), were residents of Contra Costa County and were civilian employees, agents

and/or representatives of CCDA. At all times relevant hereto, said Defendants were acting within

the course and scope of their employment as civilian employees of CCDA, a department and

subdivision of Defendant Contra Costa County. At all times relevant herein, said Defendants were

acting under color of law, under the color of statutes, ordinances, regulations, policies, customs,

practices and usages of Contra Costa County, CCDA, and/or the State of California. At all times

1    relevant hereto, Plaintiff alleges BECTON served as the highest official for CCDA and made the

2    County and CCDA policy for that office.

3        16.    Defendant SDA Officials: At all times herein mentioned, Plaintiff is informed and

4    believes, and thereon alleges that individual Defendant District Attorney Jill RAVITCH

5    ("RAVITCH") is an elected public official. Individual Defendants Chief Deputy District Attorney

6    Anne MASTERSON ("MASTERSON"), and Deputy District Attorney Laura PASSAGLIA

7    ("PASSAGLIA"), were residents of Sonoma County and were civilian employees, agents and/or

8    representatives of SDA. At all times relevant hereto, said Defendants were acting within the

9    course and scope of their employment as civilian employees of SDA, a department and

10    subdivision of Defendant Sonoma County. At all times relevant herein, said Defendants were

11    acting under color of law, under the color of statutes, ordinances, regulations, policies, customs,

12    practices and usages of Sonoma County, SDA, and/or the State of California. At all times relevant

13    hereto, Plaintiff alleges RAVITCH served as the highest official for SDA and made the County

14    and SDA policy for that office.

15        17.    **CCDA and SDA Officials are not immune to this suit**. "Prosecutorial immunity

16    only protects the defendants from [§] 1983 damage claims; it does not protect them from suits for

17    injunctive relief." Gobel, 867 F.2d at 1203 n.6. To determine whether particular actions warrant

18    absolute immunity, courts apply a "functional approach." *Buckley v. Fitzsimmons*, 509 U.S. 259,

19    269 (1993). This approach "looks to 'the nature of the function performed, **not the identity of the**

20    **actor who performed it**[.]'" Id. (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).

21    "Absolute immunity 'is an extreme remedy, and it is justified only where any lesser degree of

22    immunity could impair the judicial process itself.'" *Garmon v. Cty. of Los Angeles*, 828 F.3d 837,

23    843 (9th Cir. 2016) (quoting *Lacey v. Maricopa Cty*., 693 F.3d 896, 912 (9th Cir. 2012) (en

24    banc)). See also *Brooks v. Clark Cty*., 828 F.3d 910, 915–16 (9th Cir. 2016) (discussing absolute

25    immunity). "[T]he official seeking absolute immunity bears the burden of showing that such

26    immunity is justified for the function in question." Burns, 500 U.S. at 486. "The presumption is

27    that qualified rather than absolute immunity is sufficient to protect government officials in the

28    exercise of their duties." Id. At 486-87. The purpose of absolute immunity is to eliminate

1   susceptibility to legal actions that would inhibit prosecutors from aggressively prosecuting cases.

2   When prosecutors fail to perform their duties, provide favoritism to suspects, and act in their own

3   interest this Court should reject their absolute immunity. The following actions by CCDA and

4   SDA Officials are neither prosecutorial in nature nor decisions of judgment but deplorable

5   intentional antithesis of exercise of judgment:

6       a. Adopt "no policy" policy for prosecution of rape which constitutes deliberate indifference

7           to rape victims safety and a general disinterest in prosecuting sexual assaults due to bias.

8           The lack of written policy allows CCDA and SDA Officials to make wholly arbitrary

9           decisions and is the moving force behind Plaintiff's constitutional injuries;

10      b. When asked to adopt "offender-focused approach" and "expert witness strategy" that are

11          recommended by National District Attorneys Association ("NDAA") CCDA and SDA

12          Officials maliciously refused, giving an ostensible reason that the case cannot be proved

13          beyond a reasonable doubt and falsely told Plaintiff that jury would not believe expert

14          witness. Bias against rape victims could not be clearer; <Prosecuting Alcohol-Facilitated

15          Sexual Assault> (http://atixa.org/wordpress/wp-

16          content/uploads/2014/04/pub_prosecuting_alcohol_facilitated_sexual_assault.pdf),

17          <Cold Case Alcohol- and Drug-Facilitated Sexual Assault>

18          (https://www.sakitta.org/toolkit/docs/Cold-Case-Alcohol-and-Drug-Facilitated-Sexual-

19          Assault.pdf), <Understanding the non-stranger rapist>

20          (http://www.ncdsv.org/images/NDAA_UnderstandingNonstrangerRapist_TheVoice_vol

21          _1_no_11_2007.pdf)

22      c. Willfully refuse to perform their duties pursuant to professional standards;

23      d. Intentionally and consistently credit the suspect's version over Plaintiff's account

24          because she is a rape victim, notwithstanding objective evidence;

25      e. Callously disregard victim and community safety by using absolute immunity as a badge

26          and shield for their discriminatory practice with no showing of a valid state interest;

27      f. Deter Plaintiff from pursuing truth and justice by falsely telling her that there was not

28          enough evidence and creating purported reasons to justify their discriminatory and

unconstitutional treatment to Plaintiff because she is a woman reporting rape;

g.   Falsely told Plaintiff there was no corroboration, despite corroboration is not required by law for conviction; (https://aequitasresource.org/wp-content/uploads/2018/09/Model-Response-to-Sexual-Violence-for-Prosecutors-RSVP-An-Invitation-to-Lead.pdf)

h.   Made multiple untrue statements to Plaintiff that were far departure from professional standards, jury instruction, and prosecution guidelines which is a strong indicator that discriminatory intent was a motivating factor for CCDA and SDA Officials' wild spread custom;

i. Act in their own personal interest to avoid losing at trial simply because rape cases are hard to win and they pick easy cases to make their personal conviction rates look good for their resumes (their powerful incentive to discriminate against rape victims);

j. Intentionally enforce a "non-law", maliciously requiring strong corroboration and physical evidence to establish rape, a requirement that is not required by law or jury instruction, reflecting higher criteria compared to other crimes with no showing of legitimate state interest but solely aiming at conviction rate for prosecutor's own personal interest;

k.   Maliciously ignore the fact that a victim's testimony alone is legally sufficient evidence for filing charges but falsely told Plaintiff that there was no corroboration, reflecting rape cases are less "worthy" of prosecution than other crime cases;

l.   Willfully provide favoritism and leniency towards rapists, including WEAMER who attacked Plaintiff;

m.   Intentionally use their control and influence to shut Plaintiff out of criminal justice system and reduce the number of perpetrators held accountable for sexual assaults;

n.   Employ disparate unwritten policy to rape cases compared to other type of crimes; (In 2017 and 2018, CCDA's prosecution rate of rape is as low as 34% although few sex crimes referred for prosecution by police and sheriff. This compares to a substantially higher rate at every stage for non-rape crimes, reflecting the lowest priority of CCDA's efforts. Shockingly SDA's prosecution rate of rape is 31%, even lower than CCDA.)

o.   Use "insufficient evidence" as a disguise to deprive Plaintiff of her constitutional rights;

8

p.   Employ unconstitutional and discriminatory practice against sexual assault victims, including Plaintiff; and

q.   Misuse their power to undermine the quality of justice.

18.   Defendant DOES 1 through 10 are not known or identified at this time. On information and belief, Plaintiff alleges that each Doe is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein.  When the true names and capacities of said Defendants become known, Plaintiff will seek relief to amend this complaint to show their true identities in place of their fictitious names as DOES 1 through 10. Defendants, DOES 1 through 10, and each of them, were the agents, employees and servants of the City of Concord and Cotati, Contra Costa or Sonoma County.  Defendants DOES 1 through 10 acted in the course and scope of said agency, service and employment at all relevant times.

19.   Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.

20.  Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

21.  All Defendants are sued in their official capacities for declaratory and injunctive relief as to all claims. All Defendants are also sued for damages arising from violations of 42 U.S.C. §§ 1983 and 1985, and for violations of state law and the California Constitution.

22.  Defendants Concord and Cotati PD Officers, CCDA and SDA Officials, and DOES 1 through 10 are also sued in their individual capacities for their violations of Plaintiff's constitutional and statutory rights.

## JURISDICTION AND VENUE

23.  The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367(a) because this action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1985.

24.   The Court may award damages and grant declaratory and injunctive relief for constitutional violations pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and/or Federal Rules of Civil Procedure 57 and 65.

25.   Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this district and the Defendants reside in this district and state.

## CONCORD PD POLICIES AND PROCEDURES

26.   At all relevant times, all Concord PD members were required to be apprised of the Fourteenth Amendment of the United States Constitution, and were required, at all times, to follow the United States Constitution, the laws of California and also to comply with Concord PD's Mission. Concord PD's Mission applies to all Concord PD members such as Defendant Concord PD Officers. Each member of Concord PD, including Defendant Concord PD Officers, is required to be familiar with Concord PD mission and must adhere to its directives.

27.   Concord PD's Mission states "The members of the Concord Police Department are dedicated to providing the highest quality police services in order to enhance community safety, protect life and property, and reduce crime and the fear of crime. To do this, we pledge to develop a partnership with the community, lead a community commitment to resolve problems, and improve the safety and quality of life in our City."

(https://www.cityofconcord.org/841/Department-Policy)

28.   Although providing the highest quality police services is Concord PD's mission no written policies relating to investigation of rape exists which constitutes deliberate indifference to rape victims safety and a general disinterest in investigating sexual assaults due to bias and dismissive attitude.

## CRIMINAL PROSECUTION AND STATEWIDE SYSTEMIC FAILURE

29.   As the United States Supreme Court has explained, the prosecutor represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." A prosecutor is held to a standard higher than that imposed on other attorneys because of the unique function he or she performs in representing the interests, and in

10

exercising the sovereign power, of the state.

30.   American Bar Association ("ABA") Criminal Justice Standards for the Prosecution Function: Standard 3-1.2 Functions and Duties of the Prosecutor (b) The primary duty of the prosecutor is to seek justice within the bounds of the law, not merely to convict. Standard 3-4.4 Discretion in Filing, Declining, Maintaining, and Dismissing Criminal Charges (c) A prosecutor may file and maintain charges even if juries in the jurisdiction have tended to acquit persons accused of the particular kind of criminal act in question.

(https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEditi on/ )

31.   In cases which involve a **serious threat** to the community, the prosecutor should not be deterred from prosecution by the fact that in the jurisdiction juries have tended to acquit persons accused of the particular kind of criminal act in question because prosecutors have an ethical obligation to pursue difficult cases for public safety reasons.

32.   Law enforcement agencies can clear, or "close," offenses in one of two ways: by arrest or by exceptional means. In certain situations, elements **beyond** law enforcement's control prevent the agency from arresting, formally charging, and prosecuting the offender. When this occurs, the agency can clear the offense *exceptionally*. Such exceptional circumstances should not occur frequently.

 While "statistics have a place in disparate treatment cases, their utility 'depends on all of the surrounding facts and circumstances.'" *Sengupta v. Morrison-Knudsen Co.,* 804 F.2d 1075 (9th Cir. 1986) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 340, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)) (citation omitted). The following statistics show a stark pattern of discrimination unexplainable on grounds other than sexual assault. California's clearance and arrest rate by different categories of crimes suggests that California devotes less resources in the enforcement of rape laws:

///

///

///

| Type of data | Category | 2018 | 2017 | 2016 | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|---|---|
| # of crimes reported | Homicide | 1,739 | 1,829 | 1,930 | 1,861 | 1,697 | 1,745 |
| # of crimes reported | Rape | 15,500 | 14,724 | 13,695 | 12,793 | 9,397 | 7,459 |
| # of crimes reported | Aggravated assault | 105,315 | 105,391 | 104,307 | 99,149 | 91,681 | 88,809 |
| # of clearances | Homicide | 1,116 | 1,144 | 1,140 | 1,145 | 1,091 | 1,146 |
| # of clearances | Rape | 5,329 | 5,427 | 5,585 | 5,304 | 3,921 | 3,110 |
| # of clearances | Aggravated assault | 56,484 | 56,227 | 54,783 | 53,629 | 51,470 | 49,470 |
| Clearance rate | Homicide | 64.17% | 62.55% | 59.07% | 61.53% | 64.29% | 65.67% |
| Clearance rate | Rape | 34.38% | 36.86% | 40.78% | 41.46% | 41.73% | 41.69% |
| Clearance rate | Aggravated assault | 53.63% | 53.35% | 52.52% | 54.09% | 56.14% | 55.70% |
| # of arrest | Homicide | 1,416 | 1,501 | 1,440 | 1,439 | 1,427 | 1,423 |
| # of arrest | Rape | 2,541 | 2,557 | 2,558 | 2,467 | 2,444 | 1,601 |
| # of arrest | Aggravated assault | 90,089 | 88,693 | 87,415 | 88,348 | 87,735 | 82,700 |
| Arrest rate | Homicide | 81.43% | 82.07% | 74.61% | 77.32% | 84.09% | 81.55% |
| Arrest rate | Rape | 16.39% | 17.37% | 18.68% | 19.28% | 26.01% | 21.46% |
| Arrest rate | Aggravated assault | 85.54% | 84.16% | 83.81% | 89.11% | 95.70% | 93.12% |

Source: https://openjustice.doj.ca.gov/resources/publications

When the offenses are cleared by exceptional means, clearance rate is greater than arrest rate. The arrest rate of rape is much lower than clearance rate due to exceptional clearance which does not occur in homicide and aggravated assault. Compared to homicide and aggravated assault rape has shockingly low arrest rates even though rape is the most under-reported crime. What it means is most and tons of rapists walk free every single day in every corner of our community. When it comes to homicide and aggravated assault law enforcement personnel appear to be "competent" but they have a preference to close rape cases by exceptional clearance.

33.   The only way to effectively diminish sexual assault is through the full force of the criminal justice system, which must treat sexual assault the same as it treats any other crime. Aggressive prosecution of sexual assault, at least to the same extent that other violent crimes are

prosecuted, is mandated by the Equal Protection Clause of the Fourteenth Amendment. Weak prosecutorial effort causes direct harm to the victims of sexual assault. It affects the assailants' behavior, the police response level, and the victim's own choices. First, if the perpetrator knows that he will not be held accountable for his actions, he is more likely to continue the abuse. Second, police behavior is affected by prosecutorial decisions. Police may try to justify their failure to arrest rapists as a waste of time and resources because prosecution of sexual assault is not favored by district attorneys. Thus police may defend their policy as substantially related to the important state interest of using limited resources most efficiently. This is not really a defense, but rather a passing of the buck to the District Attorney's office of responsibility for the discrimination. Third, lack of prosecutorial effort discourages the victim from asking for help. Statistics show that one of the primary reasons that women do not report sexual assault is the ineffectiveness of legal remedies. Victims' reluctance stems as much from the treatment they receive from the legal system as from their assailants. Prosecutors' lack of commitment often tacitly and overtly discourages victims. The problem has been called "a self-fulfilling prophesy."

34.  According to NDAA, rape cases rarely have physical evidence that conclusively proves that a rape occurred. The evidence need not **conclusively** prove that a rape occurred; rather, it must give the jury a sufficient **context** in which to evaluate the victim's credibility. (http://atixa.org/wordpress/wp-content/uploads/2014/04/pub_prosecuting_alcohol_facilitated_sexual_assault.pdf)

35.  Physical evidence can prove that the intercourse happened, but not the absence of consent. When there's no issue about who the assailant is DNA doesn't really contribute anything. Victim's reaction or whether or not victim stays contact with the perpetrator is not a crime element. It's prosecutor's duty to educate the jury the right way to identify whether or not a crime occurred. https://kycir.org/2019/12/05/prosecution-declined/

36.  "You don't need it, if you believe [E.R. (victim)]," assistant County Attorney Kristin Vartanian argued to jurors. "You do not need any additional evidence to convict the defendant. You don't need fingerprints or DNA, you don't need an eyewitness to the crime." (https://newrepublic.com/article/152305/who-to-believe-sexual-assault)

37.   CCDA declares that their office's mission is to seek justice and enhance public safety for all their residents by fairly, ethically, aggressively and efficiently prosecuting those who violate the law, and by working to prevent crime. (https://www.contracosta.ca.gov/7284/District-Attorney)

38.   SDA's mission statement indicates that "We shall seek truth and justice in a professional manner, while maintaining the highest ethical standards." (http://da.sonoma-county.org/content.aspx?sid=1023&id=1379)

39.   AEquitas is a national technical assistance provider that specializes in the prosecution of gender-based violence and human trafficking crimes. AEquitas is a nonprofit organization that brings decades of prosecution experience and collaborative approach to offer law enforcement advice and resources across disciplines at no cost. (https://aequitasresource.org/)

40.   Corroboration is not required by law for conviction. (https://aequitasresource.org/wp-content/uploads/2018/09/Model-Response-to-Sexual-Violence-for-Prosecutors-RSVP-An-Invitation-to-Lead.pdf)

41.   Much lower arrest rate of rape compared to other crime demonstrates law enforcement's intentional failure.  (http://big.assets.huffingtonpost.com/Justice-Gap-paper.pdf)

| Agency | Arrest rate between 2014 and 2018 | | |
|---|---|---|---|
| | Rape | Aggravated Assault | Homicide |
| Cotati PD | 33% | 58% | 100% |
| Concord PD | 18% | 83% | Unknown |

42.   The low number of arrests and prosecutions for sexual assault is not a statistical anomaly. The fact that so few people are arrested and held accountable for sexual assault is a direct result of a persistent pattern of indifference toward and disregard for the safety of rape victims by law enforcement.

43.   The failure to properly investigate and prosecute sexual assault cases has been motivated at least in part by animus toward women reporting rapes. Rape cases are deemed unworthy to investigate and prosecute.

44.   California law enforcement agencies have reported rape at "unfounded" rates in recent years as high as 55% in Concord, 53% in Berkeley, and a statewide clearance rate of 40.8% in

14

1    2016 (higher than the national average of 37%). However, no "unfounded" has been reported for

2    other types of crime. These fundamental investigative problems still remain today.

3    (https://www.buzzfeednews.com/article/alexcampbell/unfounded#.wa7gk54Zr)

4        45.   Another reason that investigations of sexual assault were conducted so poorly—or not

5    at all—is local governments' historic failure and refusal to adequately train law enforcement

6    personnel. City of Concord agreed with a finding in a 2016 Contra Costa County Grand Jury

7    report stating that most county personnel and law enforcement dealing with victims of sexual

8    exploitation of children lacked in-depth training. Between 2010 and 2019 Cotati PD did not

9    provide any training to its officers regarding sexual assault.

10       46.   Law enforcement personnel's actions or inactions, protocol and procedures,

11   disproportionately affect female sexual assault victims generally and violated Plaintiff's equal

12   protection rights. Law enforcement personnel's intentional acts and their policies and procedures

13   have created the danger of an increased risk of harm to Plaintiff and other victims of sexual

14   assault who are disproportionately women. All these failures come from a "long-standing refusal"

15   to properly investigate and effectively prosecute sexual assault crimes against women.

16                                   **RAPE KIT BACKLOG**

17       47.   In 2015 there were 2400 untested rape kits found in Contra Costa County and all these

18   untested rape kits were from female victims.  However, there was never ever any backlog of

19   DNA testing for homicide or other crimes.

20       48.   The discriminatory practice against rape victims is long-standing, wildspread, and well

21   settled. (https://www.huffpost.com/entry/the-rape-kit-backlog-shows-exactly-how-we-regard-

22   women-in-this-country_n_5acfb5e1e4b016a07e9a8c65)

23                         **SEXUAL AND DOMESTIC VIOLENCE**

24       49.    It is a common misconception that most sexual assaults are committed by strangers. In

25   reality, sexual assault can be perpetrated by anybody. A woman is more likely to be sexually

26   assaulted by someone she knows— a friend, partner, date, classmate, neighbor or relative—than

27   by a stranger in a dark alley. <Understand the Nature and Dynamics of Sexual Violence>

28   (https://www.mocadsv.org/FileStream.aspx?FileID=3)

1         &lt;Dynamics of Sexual Violence&gt; (https://www.youtube.com/watch?v=gSh7CmWGa58)

2        50.    Five categories of sexual violence (https://ndaa.org/wp-content/uploads/NDAA-DV-

3 White-Paper-FINAL-revised-July-17-2017-1.pdf):

          a.   Rape or penetration of victim;

          b.   Victim made to penetrate someone else;

          c.   Non-physically pressured unwanted penetration;

          d.   Unwanted sexual contact, defined as the "intentional touching of the victim or making the victim touch the perpetrator, either directly or through clothing . . . without the victim's consent";

          e.   Non-contact unwanted sexual experiences, defined as the "unwanted exposure to sexual situations (e.g., pornography); verbal or behavioral sexual harassment; threats of sexual violence to accomplish some other end; and /or unwanted filming, taking, or disseminating photographs of a sexual nature of another person".

       51.    Researches show that distorted thoughts is one of the main reasons women stay in abusive relationships. Being controlled and hurt is traumatizing, and this leads to confusion, doubts, and even self-blame. For example, women shared: "I believed I deserved it." Others minimized the abuse as a way to cope with it, saying: "[I stayed] because I didn't think that emotional and financial abuse was really abuse. Because words don't leave bruises,'' and, "Because I didn't know what my boyfriend did to me was rape." (http://www.ncdsv.org/images/Investigating%20and%20Prosecuting%20Intimate%20Partner%20Sexual%20Assa….pdf); (https://law.lclark.edu/live/files/17491-countering-common-misperceptions-of-sa-victims)

       52.    When NFL linebacker Ray Rice knocked his fiancée Janay Palmer unconscious in an elevator in 2014, it didn't initially get much attention. He was accused of domestic violence and suspended for two games. After a few weeks, he was formally charged, but he and Palmer were married the next day. A security video quickly went viral showing Janay Palmer knocked down and roughly dragged out of the elevator by Rice. Victim's staying with their abuser does not erase the crime committed by the abuser.

53.    Both rape and battery are domestic violence and they should be treated the same way. No law requires a victim breaking up with their attacker to establish battery or rape. Relationship is not a deciding factor when it comes to a crime. Rape should be established based on specific facts and events instead of the relationship between the victim and perpetrator. The essential element of rape is lack of consent.

54.    In 2008 the United Nations Security Council adopted Resolution 1820, noting that "rape and other forms of sexual violence can constitute war crimes, crimes against humanity, or a constitutive act with respect to genocide". Rape is a means of robbing an individual of their personhood, of shaming, humiliating and attempting to destroy the individual. It is a crime in our penal code.

## INJURIES SUFFERED BY VICTIMS OF SEXUAL ABUSE

55.    The effects of sexual abuse are severe and varied. Victims of sexual abuse are harmed by "invisible wounds" which damage the victim-survivor's sense of self and his or her relationships with others. Injuries suffered by victim-survivors include feelings of confusion, shame, anxiety, guilt, low self-esteem, powerlessness, and depression. In addition to immediate injuries, many survivors of sexual abuse begin to develop symptoms much later, often years after the abuse has ended.

56.    A common coping mechanism employed by victim-survivors as a method of surviving sexual abuse is denial. Denial is "accomplished by withholding conscious understanding of the meaning and implications of what is perceived." Because sexual abuse victims are often repeatedly subjected to the abuse, complete denial of the occurrence of sexual abuse is not very common. Rather, victim-survivors tend to deny the importance of the abuse. Despite conscious efforts by the victim-survivor to continue denying the importance of the abuse, the effects of the abuse usually intrude into the victim-survivor's everyday life. Denial may continue for years after the abuse has ended, until a triggering event occurs.

57.    Coping mechanisms may preclude sexual abuse survivors from causally connecting their injuries to the abuse. In addition, the difficulties in perceiving the injury and in linking the injury to the abuse are compounded by the fact that such injuries continue to develop long after

1    the abuse itself ends.

2    58.    As a result of sexual abuse, the victim-survivor may involuntarily develop coping

3    mechanisms which render her unable to perceive the connection between the sexual abuse and

4    psychological injuries. The pattern of sexual abuse becomes so well ingrained within the victim-

5    survivor's concept of normalcy that it becomes difficult for the victim-survivor to see the causal

6    nexus between her injury and the abuse. These coping mechanisms continue to operate long after

7    the abuse has ended. Therefore, by its very nature, sexual abuse renders its victim-survivors

8    unable to perceive the nexus between abuse and injuries. The inability to make this connection is

9    in itself an injury caused by sexual abuse.

10    **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

11    59.    Plaintiff grew up in a traditional household in a foreign county with long-standing

12    social prohibitions on talking about sexual matters.

13    60.    In 2013 Edward WEAMER ("WEAMER") was a police officer at Sonoma University

14    Police Department. In Nov 2013 via an online app "POF" WEAMER friended Plaintiff and

15    started chatting with her online.

16    61.    Before Plaintiff met WEAMER in person she made a clear statement via text

17    messages that she didn't want to rush sex and insisted to stick to her traditional culture.

18    WEAMER agreed to respect Plaintiff so Plaintiff decided to meet him in person.

19    62.    Once Plaintiff met WEAMER in person, he didn't keep his words and forced himself

20    on top of Plaintiff around ten times between 2013 and 2014.

21    63.    Via Plaintiff's message conversations with WEAMER he acknowledged that each

22    time Plaintiff said no and resisted. Plaintiff also accused WEAMER that he set her up but she was

23    not able to recognize what WEAMER had done to her was a crime due to her confusion about

24    rape. Plaintiff mistakenly thought rape was a crime committed by a stranger. < Understanding and

25    Countering Rape Myths >

26    (https://www.nationalguard.mil/Portals/31/Documents/J1/SAPR/SARCVATraining/Barriers_to_

27    Credibility.pdf)

28    64.    In Aug 2014 Plaintiff broke up with WEAMER and never had contact with him again.

1    Over the years Plaintiff has been broken, and experienced depression, anxiety, and low self-

2    esteem but she didn't know where those came from until Oct 2019.

3         65.   In Oct 2019 Plaintiff met with LA County prosecutor Peter Cagney and he explained

4    to Plaintiff what rape was. Plaintiff has realized what WEAMER had done to her was in fact rape.

5         66.   Plaintiff finally gathered her courage to come forward on Oct 18, 2019. At the time

6    she believed that coming forward would be her first step to heal and it was her moral obligation to

7    report it to stop it. However, it turned out she was completely wrong and her life has been turned

8    upside down.

9         67.   In 2013 Plaintiff was raped in Cotati. In 2014 WEAMER raped Plaintiff in Concord.

10   Plaintiff filed the police reports with Cotati PD and Concord PD respectively on Oct 18, 2019.

11            *Cotati PD's discriminatory practice and custom against sexual assault*

12        68.   After the initial report was filed on Oct 18, 2019 Officer KNIGHT informed Plaintiff

13   of victims rights and followed up with Plaintiff the following week. However, approximately

14   three months after Plaintiff first reported the assaults WEAMER was still not contacted by

15   KNIGHT for investigation. Between Oct 2019 and Jan 2020 each time Plaintiff made enquiry

16   about the case KNIGHT falsely told Plaintiff he was working on the case but in fact nothing was

17   done.

18        69.   Often, sexual predators are repeat offenders. The ability to determine the prior sexual

19   history of a defendant in the majority of sexual assault cases is a crucial matter. However, since

20   WEAMER refused to make a statement to Cotati PD he faced no investigation or scrutiny from

21   law enforcement. By dismissing Plaintiff's allegations, after little to no investigation conducted

22   KNIGHT maliciously concluded the incidents were consensual and the case was subsequently

23   submitted to SDA.

24        70.   At all relevant time, KNIGHT's supervising sergeant GALLO, was aware of his

25   misconduct, including the false conclusion after no investigation done. Plaintiff obtained a copy

26   of the incident report prepared by KNIGHT and demanded GALLO for an explanation but

27   GALLO endorsed or approved those failures by taking no correction action. GALLO did nothing

28   to address the situation or to initiate a review of the matter. GALLO's silence and intentional

1    supervisory failures constitute violations of Cotati PD policy and procedures.

2    *Concord PD's discriminatory practice and custom against sexual assault*

3    71.   After the initial interview with Concord PD Officer Shasta Vanetti on Oct 18, 2019,

4    the following month Plaintiff heard nothing from Concord PD, no follow-up and literally nothing.

5    72.   In November 2019 Plaintiff left voice mail to Detective VALEROS but still heard

6    nothing from Concord PD in the following month.

7    73.   In December 2019 after Plaintiff reached out to Sgt HARRISON she finally got a

8    phone call from Detective VALEROS.

9    74.   Rather than ask relevant questions regarding crime elements the first thing VALEROS

10   wanted to confirm was "So are you still living in Southern California?" Perhaps he thought he

11   could treat this case less seriously because the victim lived far away.

12   75.   Then Plaintiff was asked by VALEROS what's her ultimate goal which is the most

13   disgusting exhibition of law enforcement code of ethics. Such humiliating and degrading question

14   strongly suggests his discriminatory animus towards Plaintiff as a rape victim. Such question

15   demonstrates that VALEROS thought Plaintiff came forward for something else other than

16   justice. A victim of other crimes would not be asked about their goal to come forward.

17   https://www.justice.gov/opa/file/799366/download

18   76.   Plaintiff was shocked to find out the suspect was not contacted nearly two months

19   after she reported the crime.

20   77.   Despite there is no statute of limitations for rape VALEROS told Plaintiff this

21   happened five years ago. Even though WEAMER admitted through texts that each time Plaintiff

22   said no and resisted VALEROS told Plaintiff he could not prove it was WEAMER who was

23   texting which was a false and willful material misrepresentation intended to prevent Plaintiff

24   from pursuing the case. (There are many ways to authenticate messages under California

25   Evidence Codes)

26   78.   No useful information was extracted during Plaintiff's conversation with VALEROS.

27   No question regarding the crime element was asked. The "investigation" conducted by

28   VALEROS was meaningless with respect to proving a crime. Instead, VALEROS' language

20

1    reflects how he deterred Plaintiff from pursuing the case.

2        79.   Despite pretext phonecall is a commonly used technique to obtain confession from the

3    offender Valero opt not to use it, not to mention he would not spend any effort finding out if there

4    would be more women victimized by WEAMER.

5        80.   In December 2019 Plaintiff was really concerned by VALEROS' attitude and she

6    reached out to Sgt HARRISON again. However, despite there is no statute of limitations for rape

7    and physical evidence is not required by law or jury instruction, HARRISON falsely announced

8    to Plaintiff that the case was six years old and there was no physical evidence at all for filing

9    charges. HARRISON didn't stop there. He further falsely told Plaintiff that there was no

10   indication of any type of sexual assault and appeared quite consensual which strongly suggests

11   how Concord PD Officers deterred Plaintiff from pursuing justice and Concord PD Officers'

12   discriminatory intent to discount and dismiss Plaintiff's allegation.

13       81.   After the horrifying interactions with VALERO and HARRISON Plaintiff reached out

14   to Lieutenant ROBERTS. Throughout Plaintiff's conversation with ROBERTS she repeatedly

15   told Plaintiff that district attorney would not file charges therefore she would not present the case

16   to CCDA.

17       82.   Despite victim's testimony is legally sufficient to establish probable cause and file

18   charges ROBERTS falsely told Plaintiff that her testimony was absolutely not enough and there

19   was no evidence of sexual assault.

20       83.   When there's no issue about who the assailant is DNA doesn't really contribute

21   anything. Despite the suspect is known and admitted having sex with Plaintiff, despite what says

22   on jury instruction, ROBERTS falsely told Plaintiff "There needs to be physical evidence, uh,

23   either DNA evidence or a confession from the suspect. Um, and we don't have any of those

24   things. In this case, there's no DNA evidence."

25       84.   The crime of battery (e.g. a punch) is established based solely on the perpetrator's

26   actions and/or intent. The victim's response to being punched is irrelevant. The victim need not

27   resist nor express unwillingness to being punched to establish a crime, nor is a victim's history of

28   being punched relevant. The relationship between the assailant and the victim does not make the

crime less seriously or make the victim suffer less, for example, a father punched his son.

85. While Plaintiff pointed out that WEAMER acknowledged each time Plaintiff said no and resisted but ROBERTS challenged Plaintiff "But then you got back together with him and continued." It's obvious that ROBERTS treat rape completely different from other crimes. Under ROBERTS' theory there would never be spousal rape and domestic violence.

86. There is no law requires victim act in certain way in order to prove she was raped. ROBERTS' stereotype about how victims should behave constitutes unlawful discrimination. ROBERTS' language also reflects her discriminatory intent to discredit Plaintiff and discard Plaintiff's allegation. ROBERTS' announcement left Plaintiff feeling coming forward was a punishment to herself and she should not have reported the incident to the police at all. Such victim blaming does not occur with other types of crimes. Moreover, according to ROBERTS' theory a man is entitled to rape a woman if they are in a relationship, suggesting a strong purposeful animus towards Plaintiff.

87. Although victim's reaction is not a crime element ROBERTS twisted Plaintiff's account of story and put words in Plaintiff's mouth "You were okay with having sex." by ignoring how a victim would process trauma. Then ROBERTS falsely told Plaintiff the text messages would only work in the suspect's favor and there was no evidence of sexual assault.

88. Battery and rape are both domestic violence. The law does not require a victim break up with the assailant to establish battery but ROBERTS told Plaintiff "This is a different situation. You continue to get together with him." ROBERTS imposed a non-law to require Plaintiff break up with the suspect to establish rape. ROBERTS flat out told Plaintiff "Most people, if they got raped, they wouldn't get together with that person again." Such remarks strongly suggest an intention to treat sexual assault cases less seriously than other assaults, as well as an animus against rape victims. ROBERTS' pro-defendant attitude is capable of several interpretations: perhaps she believed that men are always entitled to sex in a relationship, that Plaintiff was not entirely blameless because she stayed contact with the attacker, that such assault was less severe and traumatic because she was dating this suspect, or that state officials should not intrude upon dating violence. Whatever the reason, ROBERTS' language reflects an outdated

22

1    misconception concerning rapes that cannot be used as a source of differential treatment.

2    ROBERTS' statement also demonstrates her discriminatory intent to devalue Plaintiff's

3    allegation.

4        89.    When Plaintiff pointed out rape should be treated the same way as battery ROBERTS

5    responded "I don't think I can understand what you are saying."

6        90.    Regardless Plaintiff say no and resisted each time ROBERTS twisted it as sexual play.

7    ROBERTS also repeatedly declared "A district attorney would have a very hard time convincing

8    a jury of 11 people."

9        91.    The language and attitude of Concord PD Officers prove that they made minimal or no

10   effort to investigate the suspect in Plaintiff's case. None has been done to see if there are more

11   women victimized by the suspect. None has been done in order to support Plaintiff's allegation.

12       92.    ROBERTS went on and told Plaintiff "The district attorney's office won't prosecute

13   on a case like this." "If we don't have any evidence, then we don't submit the case to the district

14   attorney." "It is here in Contra Costa County, the district attorney's office would never file a case

15   like this. Um, I've been doing this for 18 years. I've worked sexual assault for five years. Um,

16   they will never file a case like this." Plaintiff's testimony is not treated as evidence by law

17   enforcement.

18       93.    Often, sexual predators are repeat offenders. The ability to determine the prior sexual

19   history of a defendant in the majority of sexual assault cases is a crucial matter. However, since

20   WEAMER refused to make a statement to Concord PD he faced no investigation or scrutiny from

21   law enforcement.

22       94.    In December 2019 Plaintiff filed a complaint with SWANGER but Plaintiff never

23   received any investigative result. SWANGER took no action to correct any failures or to

24   discipline his subordinates. By failing to discipline or act, SWANGER endorsed or approved the

25   unconstitutional conduct of individual officers.

26       95.    Concord PD personnel did not inform Plaintiff of victims' rights as set forth in

27   California constitution. At that time, and at all relevant times, Concord PD personnel had full

28   knowledge of Concord PD's mission and awareness of proper investigation protocol.

1    96.    At that time, and at all relevant times, Concord PD Officers were aware of Concord

2    PD's mission and their role as law enforcement personnel.

3    97.    Plaintiff requested Concord PD's policy and procedures regarding sexual assault

4    investigation but no such thing existed.

5    *CCDA's discriminatory practice and custom against sexual assault*

6    98.    In January 2020 CCDA declined to file charges against WEAMER. Before the non-

7    prosecution decision was made none of any member of CCDA met with Plaintiff in person, nor

8    did they ever speak to her about the alleged assaults.

9    99.    Given the way how law enforcement personnel responded to rapes, Plaintiff asked

10   herself "Can you imagine how many victims didn't get the justice they deserved?"

11   100.   On Jan 7, 2020 during a recorded phone call conversation GLEASON told Plaintiff

12   this was a he said she said case by ignoring the objective evidence. GLEASON announced that

13   there was NO EVIDENCE to prove it was not consensual by invaliding Plaintiff's testimony. By

14   intentionally ignoring the context GLEASON falsely told Plaintiff that the jury would interpret it

15   as rough sex and Plaintiff came forward because she was upset about WEAMER chasing other

16   girls. GLEASON took every word of WEAMER as true even though a normal person, through

17   inference, could easily tell WEAMER was lying. By ignoring the fact that Plaintiff texted

18   WEAMER he set her up GLEASON credited WEAMER because WEAMER falsely said Plaintiff

19   enjoyed the sex and put his penis in her vagina.

20   101.   At the end of the phone conversation with GLEASON Plaintiff requested to speak

21   with her supervisor, WALPOLE.

22   102.   On Jan 8, 2020 during a recorded phone call conversation WALPOLE declared that it

23   was their filing standard to file cases they believed they could win. "We wouldn't file cases if we

24   don't get a guilty verdict." (in violation of ABA standard) "It's a big hurdle." WALPOLE also

25   announced that they would need strong corroboration despite it was not required by law.

26   103.   In 2018 in California the conviction rate of violent offenses is 56.8% (https://data-

27   openjustice.doj.ca.gov/sites/default/files/2019-

28   07/Crime%20In%20CA%202018%2020190701.pdf). However, WALPOLE flat out told Plaintiff

24

1  "We only file cases we believe we can win. That's our filing standard." If WALPOLE's statement

2  was true CCDA had better off showing the court and jury that they have 100% conviction rate

3  over the last decade since WALPOLE had at least ten years of experience in criminal prosecution.

4  In case CCDA cannot show 100% conviction rate they must explain why they filed those charges

5  that did not convict but tossed all rape cases.

6      104.  Fortunately, CCDA's performance report does not show 100% conviction rate.

7  (https://www.contracosta.ca.gov/DocumentCenter/View/36056/District-Attorney-2015-16-

8  Performance-Report?bidId=)

9      105.  When Plaintiff questioned about the use of expert witness WALPOLE falsely told her

10  many times jury would disagree with the expert. Despite stereotype about how victims should

11  behave is unlawful discrimination and it's a prosecutor's job to select unbiased jury WALPOLE

12  falsely told Plaintiff the jury would say "If I was in her shoes, I wouldn't have had the

13  relationship."

14      106.  By invaliding Plaintiff's testimony WALPOLE valued WEAMER's version because

15  WEAMER falsely said Plaintiff put his penis inside her and being upset about WEAMER seeing

16  other women was Plaintiff's motive to pursue this case. WALPOLE also declared this was part of

17  the #Metoo movement.

18      107.  Although Plaintiff's motive is not a crime element WALPOLE attacked Plaintiff's

19  motive of coming forward was the suspect seeing other women. Motive of victims of other

20  assaults would not be attacked as a target. Under WALPOLE's theory, each cheater can get a pass

21  for rape. Every man can get away from jail time simply by alleging they are seeing multiple

22  women and the allegation is fabrication and retaliation.

23      108.  The entire time WALPOLE tried his best to derail Plaintiff from pursuing the truth

24  and justice, reflecting WALPOLE's conscious choice not to overcome common defenses. Rather

25  than uphold the law, educate the jury, and overcome common defenses, WALPOLE chose to act

26  as the suspect's advocate.

27      109.  At that time, and at all relevant times, GLEASON and WALPOLE were aware of

28  CCDA's mission and his role as a prosecutor and supervisor.

110.  In 2018 CCDA filed charges against CODY BACA **because the victim of sexual assault is male and male victims get better protection**. The DNA testing for this male victim was not delayed and his case got prosecuted even though there was no eyewitness other than the complaining witness. CODY BACA was eventually acquitted which is contradicted with WALPHOLE's notion that CCDA only file charges when they believe they can win. It also suggests that CCDA discriminate against Plaintiff due to her status as a **female** victim of sexual assault. https://www.mercurynews.com/2019/09/04/nursing-assistant-at-walnut-creek-hospital-acquitted-of-sexual-assault-burglary/

111.  Male victims of sexual assault are treated more favorably than female rape victims like Plaintiff, carried out through the various roles of law enforcement personnel, by prioritizing and employing better investigative and prosecutorial methods to male victim cases.

112.  On Jan 25, 2020 Plaintiff filed a complaint with CCDA regarding the constitutional violation and BECTON was put on notice.

113.  By failing to discipline or act, Contra Costa County and BECTON endorsed or approved the unconstitutional conduct of individual employees.

114.  Plaintiff requested CCDA's policy and procedures regarding sexual assault prosecution but no such thing was available.

115.  BECTON failed to draft or implement procedures in her office to ensure proper investigation of rape cases and proper review and handling of sexual assault prosecutions.

*SDA's discriminatory practice and custom against sexual assault*

116.  In Feb 2020 SDA declined to file charges against WEAMER. Before the non-prosecution decision was made none of any member of SDA met with Plaintiff in person, nor did they ever speak to her about the alleged assaults.

117.  On Feb 10, 2020 during a recorded phone call conversation PASSAGLIA told Plaintiff this case was fairly old regardless of no statute of limitation for rape. Despite corroboration is not required by law PASSAGLIA announced "We don't have any opportunity to do any investigation or find any corroboration".

118.  PASSAGLIA went on and told Plaintiff "It's not enough for me to say conclusively

1   what exactly occurred" and such statement is completely opposite to the prosecution guideline set

2   forth by NDAA. Despite sexual assault cases rarely have witnesses other than the victim

3   PASSAGLIA declared that "There is no opportunity to interview any witnesses and talk to people

4   in real time." which means PASSAGLIA did not treat Plaintiff as a witness. All statements made

5   by PASSAGLIA are distorted legal information in order to conceal SDA's discriminatory actions.

6       119.   On Feb 15, 2020 Plaintiff emailed MASTERSON and encourage her to follow the

7   prosecution guidelines but Plaintiff's email was ignored, reflecting SDA's dismissive attitude.

8   MASTERSON also offered support to PASSAGLIA by her inaction.

9       120.   At that time, and at all relevant times, PASSAGLIA and MASTERSON were aware of

10  SDA's mission and their role as a prosecutor.

11      121.   In Feb 2020 Plaintiff filed a complaint with RAVITCH but no action was taken.

12      122.   By failing to discipline or act, Sonoma County and RAVITCH endorsed or approved

13  the unconstitutional conduct of individual employees.

14      123.   Between 2010 and 2019 SDA provided no training whatsoever concerning adult

15  sexual assault investigation and prosecution.

16      124.   Plaintiff requested SDA's prosecution policy for sexual assault but no such thing

17  exists as Missoula County Attorney's Office does. <MISSOULA COUNTY ATTORNEY'S

18  OFFICE SEXUAL ASSAULT POLICY & PROCEDURE MANUAL> (https://dojmt.gov/wp-

19  content/uploads/SEXUAL-ASSAULT-POLICY-AND-PROCEDURE-MANUAL.pdf )

20      125.   RAVITCH failed to draft or implement procedures in the District Attorney's Office to

21  ensure proper investigation of rape cases and proper review and handling of sexual assault

22  prosecutions.

23      126.   The American Bar Association standard related to Prosecution Function says that the

24  duty of the prosecutor is to seek justice, not merely to convict. Giving false statement to a victim

25  is not prosecutorial in nature. Instead, CCDA and SDA Officials were afraid to lose the case and

26  affect their personal performance. In another words CCDA and SDA Officials acted in their own

27  interest and personal capacity during the employment as prosecutor.

28      127.     The life-long devastating harm caused by sexual assault is profound and

1    exacerbated by Defendants' deprivation of Plaintiff's fundamental rights secured to her by laws.

2    The depth of trauma inflicted upon Plaintiff has a significant impact not only on the victim, but

3    on the entire community because of the scope and lasting effect of the harm, and the fact that

4    unpunished perpetrators are encouraged to repeat their crimes.

5        128.    Plaintiff finally experienced the despair and emotional distress of living with the

6    knowledge that her rapist would never be held accountable for his act, and nothing was stopping

7    him from assaulting others. Plaintiff's rapist was well protected by law enforcement while she

8    was not and he walks free with the confidence that he can rape other women with no

9    repercussions. A rapist's words prevail and conquer in every aspect but none of Plaintiff's words

10   ever counts.

11       129.   The depth of Defendants' discriminatory treatment of sexual assault victims is all the

12   more troubling given the recent expansion of societal awareness of and sensitivity to sexual

13   assault. The discriminatory treatment and deprivation of equal protection of the laws by

14   Defendants caused significant emotional injury to Plaintiff separate and apart from the harm she

15   suffered as a rape victim.

16       130.   Upon information and belief, critical decision-making regarding the distribution of

17   resources and staffing, training of officers, detectives, and other personnel, treatment of victims

18   who come forward, and other policies and/or practices that led to the discriminatory denial and/or

19   hostile provision of services to Plaintiff were made by Defendants SWANGER, BECTON,

20   RAVITCH, and/or among others.

21       131.   Failure of Concord PD, CCDA and SDA to adhere to mission statement and training,

22   permits and facilitates the unlawful conduct described above. Accountability systems of Concord

23   PD, CCDA and SDA, do not sufficiently detect or prevent unlawful conduct, Concord PD, CCDA

24   and SDA did not properly consider and resolve complaints from Plaintiff. Early warning system

25   of Concord PD, CCDA and SDA does not adequately identify or effectively respond to a need for

26   intervention to prevent future violations of constitutional rights of sexual assault victims.

27       132.   Plaintiff's internal complaints were not formally investigated. Concord PD, CCDA and

28   SDA minimized the seriousness of Plaintiff's complaints by failing to investigate as a serious

1  complaint that could potentially result in discipline.

2      133.  At its core, the current organizational structure of Concord PD, CCDA, and SDA is

3  not capable of adequately addressing the victimization and lifetime damage inflicted on sexual

4  assault victims or to stop repeat perpetrators, particularly those who sexually assault women they

5  know or who use drugs/alcohol to commit their sexual assaults.

6  <Educating Juries in Sexual Assault Cases>

7  http://www.ncdsv.org/images/AEquitas_EducatingJuriesInSexualAssaultCasesPart1_7-2010.pdf)

8      134.  Not having any written policy and procedure for investigation and prosecution of a

9  heinous crime – sexual assault, suggests that Concord PD, CCDA, and SDA disregard the known

10  or obvious consequence and it is a conscious choice.

11                      *On-going institutional conspiracy*

12      135.  In Jul 2020 Plaintiff requested materials related to WEAMER's case from CCDA and

13  SDA, as well as crime statistics in order to see their pattern of performance. In response, by

14  asserting baseless privileges CCDA and SDA intended to prevent Plaintiff from obtaining any

15  materials that could help her better understand the facts of WEAMER's case, the prosecutorial

16  misconduct that plagued it, and statistical evidence to demonstrate that the discriminatory practice

17  is so pervasive as to constitute intent. Such tactic supports an ongoing institutional conspiracy.

18      136.  A victim of attempted murder would not be told that your attacker will not be

19  investigated because you escaped and you are not in immediate danger. A victim of vehicle theft

20  would not be told that your case is closed because your only car was stolen and you don't have

21  another car to be stolen in the future.

22      137.  However, JOSHUA K. CLENDENIN, city attorney of Concord, absurdly contends

23  that "Plaintiff has not adequately alleged that any credible threat exists that she will be subjected

24  to the specific injury about which she complains. She is a resident of Los Angeles County, she is

25  no longer in a relationship with WEAMER, and she has not had contact with him since August

26  2014. She has fallen far short of the necessary factual allegations required to demonstrate a

27  likelihood that she will be the victim of sexual assault in the City of Concord in the future." (See

28  Dkt. 24)

138.  Contra Costa County Counsel, PATRICK L. HURLEY, absurdly protests that "Plaintiff is no longer seeing E.W. It appears that plaintiff does not live in Contra Costa County. Plaintiff has alleged no facts to suggest that there is an imminent or immediate danger that she will be sexually assaulted again or that such a crime might take place in Contra Costa County." (See Dkt. 19)

139.  Sonoma County Counsel, MICHAEL A. KING, absurdly argues that "Plaintiff is no longer seeing WEAMER. He does not live in Sonoma County. Plaintiff does not live in Sonoma County. Plaintiff has alleged no facts to suggest that there is an imminent or immediate danger that she will be sexually assaulted again or that such a crime might take place in Sonoma County." Sonoma County further argues that Plaintiff will undoubtedly be able to achieve all her stated goals for accountability in a civil action against WEAMER. Such statement further supports Sonoma County's official policy to treat sexual assault as personal injury issue instead of a serious crime in violation of Cal. Const. Art. I, § 28 (a) (2). (See Dkt. 23)

140.  Among other things, such statements are another piece of evidence that it's official policy, practice, and custom to consistently and systematically provide substandard protection to victims of sexual assault and sexual assault victims are treated differently from other crime victims. Such statements sufficiently corroborate the high "unfounded" rates and low arrest/prosecution rates of sexual assault.

*Law enforcement's asserted legitimate reasons as pretext and*

*their real motivation behind the decision to abandon Plaintiff's case*

141.  A prima facie case requires facts adequate to create an inference that an adverse decision was based on an illegal discriminatory criterion. Here, Plaintiff has alleged sufficient facts for a prima facie case of discrimination. A plaintiff can present evidence showing that the asserted legitimate reasons were false or a pretext for discrimination. Showing disparate treatment or policy enforcement is a permissible means to establish pretext. A plaintiff can prove pretext (1) indirectly, by showing that the defendants' proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the defendants. A plaintiff can also identify other

similarly situated crime victims Defendants did vigorously pursue their cases.

142.   Defendants alleged that Plaintiff's case was six years old as an asserted legitimate reason to drop Plaintiff's case and it is a pretext or discriminatory animus because there is no statute limitation for rape charges in California. Andrea Constand was sexually assaulted by Bill Cosby in 2003 and Cosby was charged in 2015 and found guilty on April 26, 2018. Further, Defendants would not use being old as a reason to drop homicide cases. Murder and rape are assaultive crimes against the person and, as such, are "offenses of the same class of crimes". (*People v. Arias* (1996) 13 Cal.4th 92, 127; *People v. Alvarez* (1996) 14 Cal.4th 155, 188.) Robert Alan Durst was brought to trial on March 2, 2020 for the death of Susan Berman who was killed in Los Angeles in 2000. It is disparate treatment to drop rape cases for being old but pursue murder cases even though they are much older.

143.   Defendants' assertion is either false or pretextual that they didn't have any opportunity to do any investigation because Defendants could have interviewed Plaintiff, Plaintiff's therapists and victim advocates, and secured an expert witness in sexual assault. See California Criminal Jury Instructions 851, Testimony on Intimate Partner Battering and Its Effects.

144.   Defendants' assertion that there was no opportunity to interview any witnesses and talk to people in real time is in fact a pretext to brush Plaintiff off. For example the CODY BACA case that was recently prosecuted while the victim immediately reported the incident right after it occurred, there was no eyewitness other than the male complaining witness because sexual assault cases rarely have third party witnesses at the crime scene. The complaining witness, whether male or female, is the person that law enforcement need to talk whether in real time or not. According to California Criminal Jury Instructions 301, the testimony of only one witness can prove any fact.

145.   Defendants' assertion is either false or pretextual that they didn't have any opportunity to find any corroboration. First, various non-sexual assaults cases obtained convictions without any corroboration and simply based on a complaining witness's testimony. According to California Criminal Jury Instructions 301, in a prosecution for forcible rape, an instruction that the testimony of a single witness is sufficient may be given in conjunction with an instruction that

31

there is no legal corroboration requirement in a sex offense case. Second, Plaintiff provided Facebook messages as corroboration that the suspect acknowledged that Plaintiff resisted sex each time.

146.  The concern that a jury might believe Plaintiff had consented to sex with Weamer is a pretext for unlawful discrimination. In 2018 in California the conviction rate of violent offenses is 56.8% instead of 99%. Each case has some level of uncertainty as to whether the jury would believe the evidence or not. When dealing with the same level of uncertainty Defendants dropped female sexual assault cases first which resulted in the extremely low arrest and prosecution rate of sexual assault compared to other crimes against persons given the fact that most victims of sexual assault are female. Moreover, the primary purpose of prosecution is to seek justice within the bounds of the law, not merely to convict. For example, CODY BACA was vigorously prosecuted because the victim was male instead of female although eventually BACA was acquitted.

147.  Defendants' weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the reasons for the decision to abandon Plaintiff's case demonstrate that a reasonable trier of fact could rationally find the reasons not credible, and thereby infer Defendants did not act for the stated nondiscriminatory purpose and in fact acted for false, pretextual or discriminatory reasons. Defendants would not have abandoned Plaintiff's case if she were a victim of non sexual assault or she were a male victim of sexual assault. A reasonable jury would infer the motivation was discriminatory for the abandonment of Plaintiff's criminal complaint. Plaintiff has pled sufficient facts to establish a prima facie case of unlawful discrimination.

### **FIRST CAUSE OF ACTION**

**Equal Protection (42 U.S.C. § 1983)**

**Against all Defendants**

148.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

149.  Plaintiff, a rape victim, is a member of an identifiable group. She has been treated differently based upon illegitimate stereotypes and archaic notions of sexual assault. She further alleges that Defendants acted with discriminatory intent in discounting, invalidating, and

1   dismissing her allegation.

2       150.  After Plaintiff reported sexual assaults to law enforcement multiple law enforcement

3   personnel spared no effort to discourage Plaintiff from seeking justice tacitly by challenging

4   Plaintiff in a manner that conveys blame and disbelief, and by actively outlining the

5   disadvantages of prosecution. They also gave Plaintiff distorted and incomplete legal information

6   that thwarted Plaintiff from seeking the State's assistance. Their position is that they are viewing

7   sexual assault as less than a regular crime. This practice of affording inadequate protection, or no

8   protection at all, to women who have complained of sexual assault is tantamount to an

9   administrative classification used to implement the law in a discriminatory fashion.

10      151.  Including a police officer, a sergeant, and a lieutenant, multiple Concord PD

11  personnel's joint effort with same state of mind constitutes a tacit understanding to carry out the

12  prohibited conduct demonstrates that the discriminatory practice is so wildspread as to constitute

13  intent and official policy.

14      152.  Including a police officer and a sergeant, different ranking of Cotati PD personnel's

15  joint effort with same state of mind constitutes a tacit understanding to carry out the prohibited

16  conduct demonstrates that the discriminatory practice is so wildspread as to constitute intent and

17  official policy.

18      153.  Defendants' omissions and actions described above, when analyzed as a whole using a

19  contextualist approach, permit the inference that Plaintiff's individual case was treated differently

20  without a rational basis and showcase Defendants' custom and practice of intentional

21  discriminatory under-policing and selective under-enforcement. Defendants intentionally provide

22  unequal protection to sexual assault victims in the form of failing to respond with equal effort to

23  sexual assault victims the same as Defendants do with victims of other crimes.

24      154.  There was no reason for the misconducts and ill treatments other than animus toward

25  victims of sexual assault. Such conducts are not at all related to any governmental purpose and

26  they are a far deviation from commonly accepted procedures. It's not a single word, not a single

27  act, but a series of conducts that demonstrate Defendants' pattern of deliberate indifference and

28  unconstitutional practice to discourage the vigorous prosecution of violent crimes against sexual

assault victims.

155.  Plaintiff has been deprived of her rights of equal protection under the law – and as of the date of this filing, continues to be deprived of these rights – on account of sexual assault, in violation of the Fourteenth Amendment to the United States Constitution, in that she has been afforded less favorable terms and conditions than victims of other assaults/crimes, and continues to be afforded less favorable terms and conditions. As a consequence, Plaintiff, as a victim of sexual assault, obtained less protective resources of the state compared with victims of other assaults/crimes.

156.  The devaluation of sexual assaults burdens a particular set of victims. The laws against violence were not and will not be uniformly enforced. Because the vast majority of victims of sexual assault are women, discriminatory practice has an unjustified disparate impact on women. Rape is the most under-reported crime. 63% of sexual assaults are not reported to police. <Statistics about sexual violence> https://www.nsvrc.org/sites/default/files/publications_nsvrc_factsheet_media-packet_statistics-about-sexual-violence_0.pdf )

157.  The requisite discriminatory intent is just as easy to establish with regard to the policy of dropping numerous sexual assault charges as it is with poor police response. The extreme disparate impact itself may be a starting point for intent. Also, the Supreme Court suggested in *Arlington Heights*, 429 U.S. 252 (1977) that the historical background of a policy is relevant in determining whether it has a discriminatory purpose. The historical background of nonprosecution of sexual assault charges stems from the doctrine of "he said she said". This doctrine both constitutes respect for the man's creditability, [and] disempowers women by refusing to recognize their most basic rights. Given the force of law in sexual assault situations, a reliance on this doctrine of "he said she said" must be understood as an intent to perpetuate male rule within the society and discredit female victims. Particularly this doctrine would not be utilized for nonprosecution of non-sexual assault cases with only one eye-witness. This historical background should be sufficient to show an intent to harm women, whether conscious or "mechanical", for the sake of an equal protection claim. In *Mississippi University for Women v.*

34

1   *Hogan*, 458 U.S. 718 (1982) the Supreme Court held that the discriminatory intent need not be

2   conscious, but may be based on "the mechanical application of traditional, often inaccurate,

3   assumptions about the proper roles of men and women."

4       158.  Discrimination against rape victims puts victims at a unique disadvantage in the

5   criminal justice system, decreasing the rate of reporting rape and increasing the rate of claims

6   withdrawn by victims. <Rape and Sexual Assault in the Legal System>

7   https://www.womenslawproject.org/wp-content/uploads/2016/04/Rape-and-Sexual-Assault-in-

8   the-Legal-System-FINAL.pdf )

9                           **SECOND CAUSE OF ACTION**

10                   **Gender-based Civil Conspiracy (42 U.S.C. §§ 1983 and 1985)**

11                               **Against all Defendants**

12      159.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

13   paragraphs above.

14      160.  Starting on Oct 18, 2019 Defendants, in whole or part, conspired among themselves

15   and with others for the purpose of depriving, directly or indirectly, Plaintiff of equal protection

16   under the law with the intent to deny her right to be treated fairly and equally.

17      161.  The conduct described above, when viewed in total, is conscience shocking. Each

18   member of this conspiracy shared the same conspiratorial objective.

19      162.  Defendants engaged in a conspiracy among themselves and with others based on

20   discriminatory animus for the purpose of depriving, directly or indirectly, Plaintiff's right to equal

21   protection under the law in violation of 42 U.S.C. § 1985(3), with the object of that conspiracy

22   being to conceal the fact that the complaints of crime made by female victims, including Plaintiff,

23   are less important to Concord and Cotati PD, CCDA, and SDA than complaints made by

24   similarly-situated male rape victims.

25      163.  Defendants engaged in oral, written, and electronic communications, and/or

26   endorsement and support among themselves and with others regarding: a) their tacit agreement to

27   treat Plaintiff differently; b) actions taken to deter Plaintiff from pursuing the truth and justice;

28   and c) their effort to support each other's unconstitutional actions and discourage vigorous

                                            35

prosecution of sex crimes against women.

164.  Defendants conspired among themselves and with others to deprive Plaintiff of equal protection of the laws as alleged in this Complaint based on animosity toward Plaintiff as a woman reporting rape.

165.  Defendants' series of omissions and actions described above, when analyzed as a whole using a contextualist approach, permit the inference that Defendants have a meeting of the minds to violate Plaintiff's constitutional rights.

166.  Between January and February 2020 CCDA and SDA Officials made multiple untrue statements that were far departure from professional standards, jury instruction, and prosecution guidelines by employing their discriminatory policy towards female rape victims, in order to prevent Plaintiff from exercising her constitutional rights.

167.  Defendants, in part or whole, directly or indirectly, have used their control and influence to reduce the number of perpetrators held accountable for rapes.

168.  As a result of said conspiracy Plaintiff has suffered, is suffering, and will continue to suffer injuries, including but not limited to continued trauma, humiliation, emotional distress, anxiety, depression, stigma, and embarrassment.

169.  Defendants'' failure to prevent or aid in preventing a conspiracy under 42 U.S.C. § 1985 of which the Defendants had knowledge and the power to prevent is also in violation of 42 U.S.C. § 1986.

### THIRD CAUSE OF ACTION

**Municipal Liability for Unconstitutional Policies, Customs, and Practices (42 U.S.C. § 1983)**

**Against all Defendants**

170.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

171.  On and for some time prior to Oct 18, 2019 (and continuing to the present date) Defendants deprived Plaintiff of the rights secured to her by the Fourteenth Amendments to the United States Constitution, in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and

36

deliberate indifference to the rights of the public in general, and of Plaintiff, and of persons in her class, situation and comparable position in particular, knowingly maintained, enforced and applied officially recognized policies, practices or customs of:

(a) Employing and retaining law enforcement personnel, including , Concord and Cotati PD Officers, CCDA and SDA Officials, and DOES 1-10, who had dangerous propensities for discriminating against rape victims by failing to follow mission of Concord PD, Cotati PD, CCDA, and SDA, and/or well established laws;

(b) Failing or refusing to competently and impartially investigate allegations of misconducts, failing or refusing to enforce established administrative procedures, to ensure victims and community safety, despite Defendants' knowledge of abuse and misconduct;

(c) Having and maintaining an unconstitutional custom of discriminatory under-policing, selective under-enforcement, favoritism toward rapists, and/or hostile provision of services to Plaintiff, which also is demonstrated by inadequate training regarding these subjects, and Defendants have no valid justification for such policies, customs, and practice. The practices of Defendants, were done with a deliberate indifference to individuals' safety and rights; and

(d) Fostering and encouraging an atmosphere of lawlessness, abuse and unconstitutional misconduct, as to encourage their personnel to believe that discriminatory under-policing and selective under-enforcement would be tolerated, and to believe that unlawful acts would be overlooked without discipline or other official ramifications.

172.  SWANGER, BECTON, and RAVITCH's failure to establish and implement any policy or protocol for sexual assault investigation and prosecution illuminates that the dismissive attitude towards sexual assault is so pervasive as to constitute discriminatory intent and official policy.

173.  The practice implemented, maintained and still tolerated by Defendants, were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff. Such unconstitutional custom is and will be a threat to justice and community safety. Here is what

1  corrective action should look like: https://www.wtoc.com/2019/11/09/assistant-da-fired-

2  questioning-victims-immigration-status-dropping-sex-assault-case-police-say/

3  **FOURTH CAUSE OF ACTION**

4  **Municipal Liability – Failure to Train, Supervise, and/or discipline (42 U.S.C. § 1983)**

5  **Against all Defendants**

6  174.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

7  paragraphs above.

8  175.  On information and belief, the overwhelming majority of law enforcement personnel

9  who handle sexual assaults remain woefully untrained, and fundamentally biased against sexual

10  assault victims, making assumptions about why and when sexual assault victims behave in certain

11  ways and excusing perpetrator conduct as acceptable and/or "normal" behavior.

12  176.  Including a police officer, a sergeant, and a lieutenant, multiple Concord PD

13  personnel's improper tactics and lack of knowledge regarding sexual assault and domestic

14  violence reflect clearly inadequate training and failure to train on the part of municipal entity.

15  177.  Including a police officer and a sergeant, different ranking of Cotati PD personnel's

16  improper tactics and lack of knowledge regarding sexual assault and domestic violence reflect

17  clearly inadequate training and failure to train on the part of municipal entity.

18  178.  SWANGER, BECTON, and RAVITCH, as final decision makers, were personally put

19  on notice by Plaintiff of the existence of violation but tacitly endorsed the alleged misconduct by

20  failing to cease the violation, remedy the wrong, or discipline their subordinates. No internal

21  investigation was done regarding Plaintiff's civilian complaint. Plaintiff was never notified of any

22  result of internal investigation. Internal Affairs, SWANGER, BECTON, and RAVITCH did not

23  question it, but instead ratified it, the investigation procedure must be deemed to have been

24  carried out in accordance with official policy.

25  179.  GALLO, SWANGER, BECTON, and RAVITCH have acquiesced, condoned or

26  ratified a custom, practice or policy of ongoing deficient performance and misconduct by their

27  subordinates.

28  180.  Under SWANGER, BECTON, and RAVITCH's leadership the lax discipline gives

38

1   police officers and deputies the idea that their unconstitutional conduct would have no substantial

2   adverse consequences for them. Such intentional failure makes future misconduct is almost

3   inevitable. Concord PD's disciplinary and complaint processes, executed by policy or custom,

4   contributed to the police misconduct complained of because the procedures made clear to officers

5   that they could get away with anything.

6      181.  Under SWANGER, BECTON, and RAVITCH's leadership the longstanding

7   extremely low arrest and prosecution rate of sexual assault compared to other crimes

8   demonstrates that the discriminatory practice is so pervasive as to constitute discriminatory intent

9   and official policy.

10      182.  Given the longstanding extremely low arrest and prosecution rate of sexual assault

11   compared to other crimes SWANGER, BECTON, and RAVITCH knew or reasonably should

12   have known of the failure to train and implement effective policy, and the possibility that

13   deficient performance of the task may contribute to a civil rights deprivation.

14      183.  City of Concord, City of Cotati, Contra Costa County, Sonoma County, Concord and

15   Cotati PD, SDA, and CCDA fail to refrain employees from discriminating against sexual assault

16   victims, including Plaintiff.

17      184.  The failure of Defendants to provide adequate training and/or supervision with regards

18   to understanding crime elements, employing investigative tools, prosecuting sexual assaults,

19   selecting unbiased jury, and treating victims equally and fairly, caused the deprivation of the

20   Plaintiff's rights by, Concord and Cotati PD Officers, CCDA and SDA Officials, and DOES 1-10.

21   In other words, Defendants' failure to train and/or supervise is so closely related to the

22   deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

23      185.  SWANGER, GALLO, BECTON, and RAVITCH took no disciplinary actions against

24   their subordinates in response to their allegedly unconstitutional conduct. Their failure to

25   reprimand their subordinates was deemed that the municipal entities ratified their actions.

26      186.  Defendants have demonstrated their deliberate indifference to widespread law

27   enforcement abuses by failing and refusing to impartially investigate civilian complaints, failing

28   to discipline personnel who commit acts of dishonesty and misconduct.

1

**FIFTH CAUSE OF ACTION**

2

**Violation of Cal. Const. Art. I, § 7 – Equal Protection**

3

**Against all Defendants**

4      187.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

5      paragraphs above.

6      188.  Defendants violated Plaintiff's civil rights by having a widespread practice and/or

7      custom of discriminatory under-policing and selective under-enforcement, when enforced, caused

8      a constitutional deprivation to Plaintiff, although not authorized by written law or express

9      municipal policy, was so permanent and well settled as to constitute a custom or usage with the

10      force of law.

11      189.  Defendants' custom was intentional and, when enforced, had a discriminatory impact

12      on sexual assault victims. Plaintiff's case was not isolated incident. Plaintiff received disparate

13      treatment relative to victims of other violent crimes. Defendants set out to make reporting and

14      pursuing investigation of rapes as unpleasant and difficult as possible.

15      190.  The constitutional injury inflicted by Defendants was caused by the persons with final

16      policymaking authority at the City of Concord and Cotati, Contra Costa and Sonoma County,

17      Concord and Cotati PD, CCDA, and SDA.

18      191.  Defendants knew about the above-described conducts and facilitated them, approved

19      them, condoned them, and/or turned a blind eye to the conducts and systematic failure.

20      192.  The above-described conducts of Defendants constitute a violation of Article 1, § 7 of

21      the California Constitution.

22

**SIXTH CAUSE OF ACTION**

23

**Violation of Cal. Const. Art. I, § 28 (a) and (b) – Victims' Bill of Rights**

24

**Against all Defendants**

25      193.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

26      paragraphs above.

27      194.  California Constitution Art. I, § 28 (a) (2) provides that "Victims of crime are entitled

28      to have the criminal justice system view criminal acts as serious threats to the safety and welfare

of the people of California. The enactment of comprehensive provisions and laws ensuring a bill of rights for victims of crime, including safeguards in the criminal justice system fully protecting those rights and ensuring that crime victims are treated with respect and dignity, is a matter of high public importance. California's victims of crime are largely dependent upon the proper functioning of government, upon the criminal justice system and upon the expeditious enforcement of the rights of victims of crime described herein, in order to protect the public safety and to secure justice when the public safety has been compromised by criminal activity." However, sexual assault against female victims is being treated by Defendants as a simple personal injury issue rather than a serious crime.

195.   California Constitution Art. I, § 28 (a) (4) provides that "The rights of victims also include broader shared collective rights that are held in common with all of the People of the State of California and that are enforceable through the enactment of laws and through good-faith efforts and actions of California's elected, appointed, and publicly employed officials. These rights encompass the expectation shared with all of the people of California that persons who commit felonious acts causing injury to innocent victims will be appropriately and thoroughly investigated, appropriately detained in custody, brought before the courts of California even if arrested outside the State, tried by the courts in a timely manner, sentenced, and sufficiently punished so that the public safety is protected and encouraged as a goal of highest importance."

196.   California Constitution Art. I, § 28 (b) (1) provides that a victim shall be entitled "to be treated with fairness and respect for his or her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the criminal or juvenile justice process."

197.   Defendants have violated the rights of Plaintiff to be treated with fairness, respect, and dignity, by among other things:

    a.   Routinely and inappropriately impugning the credibility of sexual assault victims, including Plaintiff;

    b.   Falsely telling Plaintiff that the crime perpetrated against her was not actually criminal;

    c.   Willfully failing to inform Plaintiff of her rights as a crime victim; and

d.   Maliciously using ostensible reasons to deter Plaintiff from exercising her

constitutional rights.

198.  In violation of California Constitution Art. I, § 28 (b)(17), Concord PD and CCDA personnel failed to inform Plaintiff of her crime victims' rights enumerated in California Constitution.

199.  Defendants' conducts violated Plaintiff's rights that set forth in California Constitution she was entitled to be treated with fairness and respect for her privacy and dignity, and to be free from intimidation, harassment, and abuse, throughout the criminal justice process.

200.  Concord PD and CCDA personnel failed to inform Plaintiff of the rights enumerated in California Constitution Art. I, § 28 (b) in violation of Plaintiff's crime victims' right.

<u>**SEVENTH CAUSE OF ACTION**</u>

**Negligent Supervising, Training, Disciplining, and Retaining Employees**

**Against all Defendants**

201.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the paragraphs above.

202.  After being notified of the violation SWANGER, BECTON, and RAVITCH failed to establish new procedures to avoid future similar violations.

203.  Defendants CITY OF CONCORD, CITY OF COTATI, COUNTY OF CONTRA COSTA, COUNTY OF SONOMA, SWANGER, BECTON, RAVITCH, and DOES 1 through 10 failed to provide adequate training, supervision, oversight and/or retention of Defendants ROBERTS, HARRISON, VALEROS, WALPOLE, GLEASON, MASTERSON, PASSAGLIA, KNIGHT, GALLO, and DOES 1 THROUGH 10 in spite of the known risk and foreseeable likelihood of breach of the foregoing duties, which permitted the violations described above.

204.  Public officials should be held to a higher standard because of the power they hold. Defendants demonstrate their inability to exercise their duty without prejudice. If the average fast food employee exhibited a similar degree of discrimination they would be fired immediately. However, none of Plaintiff's complaints resulted in any discipline.

205.  At all times relevant herein, Defendants CITY OF CONCORD, CITY OF COTATI,

42

1    COUNTY OF CONTRA COSTA, COUNTY OF SONOMA, SWANGER, BECTON,

2    RAVITCH, and DOES 1 through 10 maintained, enforced, tolerated, permitted, acquiesced in,

3    and ratified the administrative policy, practice and custom of assigning duties to ROBERTS,

4    HARRISON, VALEROS, WALPOLE, GLEASON, MASTERSON, PASSAGLIA, KNIGHT,

5    GALLO, and DOES 1 through 10 who are unable to competently discharge such duties due to

6    their relative inexperience, incomplete or inadequate training, lack of knowledge, etc., to be ready

7    or able to competently discharge their duties.

8        206.  Defendants CITY OF CONCORD, CITY OF COTATI, COUNTY OF CONTRA

9    COSTA, COUNTY OF SONOMA, GALLO, SWANGER, BECTON, RAVITCH, and DOES 1

10   through 10 failed to adopt a procedure to train and supervise their subordinates to avoid

11   constitutional violations.

12       207.  Defendants CITY OF CONCORD, CITY OF COTATI, COUNTY OF CONTRA

13   COSTA, COUNTY OF SONOMA, SWANGER, BECTON, RAVITCH, and DOES 1 through 10

14   were aware of the obvious risks of not creating such an effective system and of not training

15   officers and deputies regarding crime victims' civil rights.

16       208.  Defendants ROBERTS, HARRISON, VALEROS, WALPOLE, COLLEEN

17   GLEASON, MASTERSON, PASSAGLIA, KNIGHT, GALLO, and DOES 1 through 10 were, at

18   the time each was hired and/or became unfit and/or incompetent to perform the work for which

19   each was hired.

20       209.  The negligence of Defendants CITY OF CONCORD, CITY OF COTATI, COUNTY

21   OF CONTRA COSTA, COUNTY OF SONOMA, SWANGER, BECTON, RAVITCH,  and

22   DOES 1 through 10 in training/supervising and/or retaining Defendants ROBERTS, HARRISON,

23   VALEROS, WALPOLE, GLEASON, MASTERSON, PASSAGLIA, KNIGHT, GALLO, and

24   DOES 1 THROUGH 10 was a substantial factor in causing Plaintiff's harm.

25                        **EIGHTH CAUSE OF ACTION**

26                    **Intentional Infliction of Emotional Distress**

27                          **Against all Defendants**

28       210.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

1    paragraphs above.

2         211.  Except for homicide, rape is the most serious violation of a person's body because it

3    deprives the victim of both physical and emotional privacy and autonomy. As a rape victim,

4    Plaintiff was particularly susceptible to emotional distress at that time but Defendants willfully

5    engaged in acts and omissions alleged herein with a discriminatory intent or a reckless disregard

6    for the probability of aggravating the emotional distress that Plaintiff was already suffering. Such

7    ill treatment is not what Plaintiff came forward for. Plaintiff certainly didn't walk into a police

8    station thinking her trauma would be lifted to another level by law enforcement personnel.  Law

9    enforcement personnel's response to sexual assault has made Plaintiff feel like being murdered

10   would be better than being raped.

11        212.  After Plaintiff gathered her courage to step forward and identify her assailant she has

12   been re-traumatized again and again at the hands of law enforcement personnel. The trauma

13   Plaintiff has experienced at the hands of Defendants prevented her from having any kind of

14   normal life.

15        213.  As a direct and proximate result of the Defendants' outrageous and unlawful conducts

16   as described herein, Plaintiff has suffered and/or continue to suffer loss of trust, comfort,

17   protection, and support, humiliation, mental anguish, nervous shock, severe emotional distress,

18   and other special and general damages in amounts according to proof.

19        214.  Punitive damages should be assessed against Defendants for the purpose of

20   punishment and for the sake of example.

21                                **NINTH CAUSE OF ACTION**

22               **Violation of Unruh Civil Rights Act (Cal. Civil Code § 51)**

23                                **Against all Defendants**

24        215.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

25   paragraphs above.

26        216.  Cal. Civil Code § 51, also known as Unruh Civil Rights Act, states that all persons

27   within the jurisdiction of this state are free and equal, and are entitled to the full and equal

28   accommodations, advantages, facilities, privileges, or services in all business establishments of

                                            44

1    every kind whatsoever.

2        217.  Defendants' policies, practices, and customs complained of herein violated Plaintiff's

3    rights to be free from discrimination and victims' rights as secured by Article I, § 1, § 7, § 28(a)

4    and (b) of the California Constitution and directly and proximately damaged Plaintiff as herein

5    alleged, entitling Plaintiff to recover a minimum of $4,000 for each and every offense pursuant to

6    California Civil Code § 52(a) and § 52.1, in addition to other damages.

7                                    **DECLARATORY RELIEF SOUGHT**

8        218.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

9    paragraphs above.

10       219.  Plaintiff respectfully prays for a declaratory judgment that Defendants, and each of

11   them, have engaged in a pattern or practice of conduct that violated Plaintiff's rights under the

12   Fourteenth Amendment to the United States Constitution, Art. I, §§ 1, 7, 13, 28 (a), 28 (b) of the

13   California Constitution, Cal. Civil Code § 52.1, and/or California common law.

14                                    **INJUNCTIVE RELIEF SOUGHT**

15       220.  Plaintiff re-alleges and herein incorporates by reference the allegations set forth in the

16   paragraphs above.

17       221.  Plaintiff prays for a permanent injunction compelling BECTON, RAVITCH, and/or

18   CCDA, SDA to file criminal charges against WEAMER.

19       222.  Plaintiff prays for a permanent injunction disbarring CHRISTOPHER WALPOLE,

20   COLLEEN GLEASON, ANNE MASTERSON, and LAURA PASSAGLIA.

21       223.  Plaintiff also prays that the Court issue a permanent injunction against Defendants

22   ordering them to:

23           a.   Set up Sexual Assault Investigations Task Force to examine current investigation

24                and prosecution policies, practices and training related to sexual assault complaints,

25                including the review of past case files;

26           b.   Properly train and supervise government employees handling sexual assault cases or

27                evidence;

28           c.   Establish written policy and procedure manual for investigation and prosecution of

sexual assaults;

d.  Require and enforce trauma-informed approaches to investigation and prosecution of sexual assault cases;

e.  Increase prosecution rate of sexual assault to 50%;

f.  Treat sexual assault cases with the same urgency and importance afforded to other types of crimes;

g.  Provide adequate resources for investigation and processing of sexual assault cases;

h.  Treat victims of sexual assault with the same respect and attention to their cases as victims of other crimes; and

i.  Accurately and publicly report data reflecting the number of sexual assaults reported, investigated, prosecuted, and processed to conclusion within the criminal justice system on a bi-annual basis.

## **PRAYER**

WHEREFORE, Plaintiff prays judgment against Defendants and each of them, as follows:

AS TO EACH CAUSE OF ACTION AS APPLICABLE

1.  For general damages according to proof;

2.  For special damages according to proof;

3.  For exemplary damages as provided by law, in an amount to be proved against each individual Defendant;

4.  For interest;

5.  For civil penalties pursuant to Civil Code § 52;

6.  For attorney's fees pursuant to 42 U.S.C. § 1988 and Civil Code §§ 52 and 52.1;

7.  For reasonable costs of this suit;

8.  For treble damages under Civil Code § 52.1;

9.  For such other and further relief or sanction as the Court may deem just, proper, and appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury for all issues so triable.

1   Dated: Aug 12, 2021

2                                                           */s/ JANE DOE*

3                                                   Plaintiff in Pro Se

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT

**CERTIFICATE OF SERVICE**

I, Jane Doe, declare and say as follows:

I am over the age of eighteen years of age and am a party to this action. I reside in the County of Los Angeles, State of California. My business address is 11151 Valley Blvd #4886, El Monte, CA 91734, in said county and state.

On <u>Aug 12, 2021</u> I electronically filed the following document(s):

Second Amended Complaint

with the United States District Court, Northern District of California by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


Dated: Aug 12, 2021


*/s/ Jane Doe*

Plaintiff in Pro Se